UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TODD SEMON, on behalf of himself, and all       :
others similarly situated,
                                                :
                        Plaintiff,              :       Civil Action
                                                :       No. 5:10-cv-00143-CR
            v.                                  :

ROCK OF AGES CORPORATION,                       :
SWENSON GRANITE COMPANY, LLC,
KURT M. SWENSON, JAMES L. FOX,                  :
RICHARD C. KIMBALL, DONALD
LABONTE, LAURA A. PLUDE, PAMELA G.              :
SHEIFFER, CHARLES M. WAITE, and
FREDERICK E. WEBSTER, JR.,                      :
                                                :
                        Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**THE COMMITTEE DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

NOW COME defendants James L. Fox, Pamela G. Sheiffer and Frederick E.

Webster, Jr. (the "Committee Defendants"), by and through their attorneys, Dinse, Knapp &

McAndrew, P.C., and oppose Plaintiff's Motion to Remand.  In opposition to that Motion, the

Committee Defendants state that the five requirements under the Securities Litigation Uniform

Standards Act, 15 U.S.C. § 78bb ("SLUSA") are satisfied and no exception to SLUSA applies

here, compelling removal and immediate dismissal.  In further opposition, the Committee

Defendants submit the following Memorandum.

## MEMORANDUM

Plaintiff brought this putative class action on behalf of himself and Rock of Ages Corporation ("ROAC") shareholders after ROAC announced that Swenson Granite Company, LLC ("Swenson Granite") had offered to purchase all outstanding ROAC stock.  Plaintiff sued despite the fact that the proposed transaction has not occurred and, indeed, may never occur. Plaintiff's motion to remand should be denied because each element of the Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb ("SLUSA") is present here -- a point that Plaintiff does not dispute and therefore concedes -- and no exception to SLUSA applies.  Plaintiff's contention that the SLUSA exception known as the "Delaware carve-out" warrants remand is meritless, because that exception does not apply to an action, such as this, concerning a proposed transaction that has not occurred, has not been agreed to or approved, and as to which shareholder approval has not been sought.  Indeed, Plaintiff fails to cite any case applying the carve-out to such a scenario.  Thus, SLUSA mandates denial of remand and immediate dismissal.

## BACKGROUND[1]

This case was reflexively filed against Swenson Granite and ROAC and its directors and officers shortly after ROAC issued a press release on May 7, 2010 announcing Swenson Granite's unsolicited proposal to purchase all outstanding ROAC stock.  (Compl.[2] ¶ 2.) The press release also announced that ROAC's Board of Directors had formed a Special Committee of independent directors to consider the proposal.  (Id. ¶ 28.)

---

[1]	In the interest of economy, the Committee Defendants refer to the Background section in their motion to dismiss (the "Motion to Dismiss" (Docket 10) at 3-4), and recite only the most salient background facts herein.

[2]	"Compl." or "Complaint" refers to Plaintiff's complaint (Docket 18).

Plaintiff alleges that Defendants may "reap substantial profits for their own benefit at the expense and to the detriment of the public stockholders of ROAC" (id. ¶¶ 1, 29) -- if the proposed transaction is successfully negotiated, if the Special Committee recommends such a deal, if the deal is approved by ROAC's Board of Directors, if ROAC's shareholders vote to approve the deal and if the deal closes.  Plaintiff alleges that Defendants have made material omissions to shareholders as to the "true future potential" of ROAC, "in order to place an artificial cap on the [proposed] Buyout Price."  (Id. ¶ 33.)  These allegations of wrongdoing are "based on . . . the May 7, 2010 press release."  (Pl. Br. 8.)

## PROCEDURAL HISTORY

Plaintiff filed this putative class action on May 19, 2010 in Washington County Superior Court.  On June 14, 2010, Defendants timely removed to federal court.  (See Notice of Removal (Docket 1).)  On June 21, 2010, the Committee Defendants moved to dismiss the Complaint in its entirety, and each of the other Defendants filed motions to dismiss joining in the Committee Defendants' motion.  The Motion to Dismiss demonstrates why (at 6-10) SLUSA applies to Plaintiff's claims, and that, as a result, dismissal is required.  The Motion to Dismiss also explains why (at 10-14) the Complaint fails to state a claim for other, independently dispositive reasons, such as the fact that because no transaction has occurred, Plaintiff has suffered no injury, his claims are not ripe and he lacks standing to sue.  On June 23, 2010, Plaintiff filed his Motion to Remand (Docket 16), arguing that SLUSA has no application to this purported class action.  On June 30, 2010, this Court entered an order (Docket 30) denying Plaintiff's motion to stay proceedings on the Motion to Dismiss pending a determination on the present motion.

## ARGUMENT

The Private Securities Litigation Reform Act ("PSLRA") was enacted in 1995 to curb abuses in class-action litigation involving claims of misrepresentations or omissions relating to nationally traded securities.   The Supreme Court recognized that the rationale for the PSLRA (and, later, SLUSA) was that these sorts of abusive cases are harmful to the economy:

> Congress, in 1995, . . . adopted legislation targeted at perceived abuses of the class-action vehicle in litigation involving nationally traded securities. . . .  [T]he House Conference Report accompanying what would later be enacted as the [PLSRA], identified ways in which the class-action device was being used to injure "the entire U.S. economy."  H.R. Conf. Rep. No. 104-369, p. 31 (1995). According to the Report, nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and "manipulation by class action lawyers of the clients whom they purportedly represent" had become rampant in recent years.  Id. Proponents of the Reform Act argued that these abuses resulted in extortionate settlements, chilled any discussion of issuers' future prospects, and deterred qualified individuals from serving on boards of directors.  Id., at 31-32.  Title I of the Reform Act, captioned "Reduction of Abusive Litigation," represents Congress' effort to curb these perceived abuses.  Its provisions limit recoverable damages and attorney's fees, provide a 'safe harbor' for forward-looking statements, impose new restrictions on the selection of (and compensation awarded to) lead plaintiffs, mandate imposition of sanctions for frivolous litigation, and authorize a stay of discovery pending resolution of any motion to dismiss.  See 15 U.S.C. § 78u-4.

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 81-82 (2006).

SLUSA was enacted shortly after the PSLRA to preclude suits, such as Plaintiff's, attempting to avoid the reforms of the PSLRA by bringing what amount to federal securities claims (i.e., claims involving alleged misrepresentations or omissions) in state court:

> According to SLUSA's Congressional findings, many class action plaintiffs avoided the stringent procedural hurdles erected by PSLRA by bringing suit in state rather than federal court.  See Pub. L. No. 105-353 § 2(2).  By suing in state court under state statutory or common law, these litigants were able to assert many of the same causes of action, but avoid the heightened procedural requirements instituted in federal court.  See id.  According to a joint House-Senate Committee Report, the decline in federal securities class action suits that occurred after the passage of PSLRA was accompanied by a nearly identical increase in state court filings.  See H.R. Conf. Rep. No. 105-803 (1998).  SLUSA was passed in 1998 primarily to close this loophole in PSLRA. It did this by

making federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities and by mandating that such class actions be governed exclusively by federal law.  See 15 U.S.C. §§ 77p(b)-(c).

Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 107-08 (2d Cir. 2001) (affirming denial of remand motion and dismissal of action pursuant to SLUSA).  The Supreme Court held in Dabit that SLUSA should be read to be broadly inclusive, because a narrow reading of the statute would "frustrate the objectives" of the PSLRA.  547 U.S. at 86 (internal quotation omitted).

As shown herein, this is the type of action that Congress sought to prevent when it enacted SLUSA.

## I.      PLAINTIFF CONCEDES THAT THE FIVE SLUSA REQUIREMENTS ARE SATISIFIED

The Notice of Removal and Motion to Dismiss show that each SLUSA requirement is satisfied:  (1) this action is a "covered" class action; (2) this action purports to be based on state law; (3) this action alleges omissions of material fact; (4) this action involves a "covered security;" and (5) the alleged omissions were "in connection with" the purchase or sale of such security.  15 U.S.C. §§ 78bb(f)(1-2).  Plaintiff does not dispute in his Motion to Remand -- and therefore concedes -- that each of these elements applies.

**(1)  This Is A "Covered Class Action".**  A "covered class action" under SLUSA must involve common questions of law or fact that predominate over any individual questions and be brought "on behalf of more than 50 persons or prospective class members".  15 U.S.C. § 78bb(f)(5)(B)(i).  Plaintiff alleges that the putative class includes "hundreds, if not thousands of shareholders" and that "there are questions of law and fact which are common to the members of the Class and which predominate over any questions affecting only individual members."  (Compl. ¶ 19(a),(b).)  He does not (and cannot) dispute that this is a covered class action.

**(2) Plaintiff's Claims Are Alleged To Be Based On State Law.** Plaintiff asserts that "The Vermont State Court Action was brought exclusively under Vermont state law, not federal law . . . ." (Pl. Br. 2.)[3]

**(3) Plaintiff Alleges Material Omissions.** Plaintiff alleges numerous material omissions. For example, Plaintiff alleges that "[t]he Individual Defendants . . . are in possession of non-public information concerning the financial condition and prospects of ROAC, and especially the true value and expected increased future value of ROAC and its assets, which they have not disclosed to ROAC's public shareholders." (Compl. ¶ 33.) Plaintiff also alleges that "[t]he Individual Defendants, who constitute ROAC's Board, are familiar with the Company's future prospects but <u>have not disclosed</u> the Company's true future potential in order to place an artificial cap on the Buyout Price." (<u>Id.</u> (emphasis added).) Further, Plaintiff alleges that "[t]he Individual Defendants, in failing to disclose the material non-public information in their possession as to the value of ROAC, the full extent of the future earnings potential of ROAC and its expected increase in profitability, have breached and are breaching their fiduciary duties to the members of the class." (<u>Id.</u> ¶ 36.)

**(4) This Action Involves A "Covered" Security.** A "covered security" under SLUSA includes a security that is "listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National

---

[3]     Plaintiff also asserts that he "may avoid federal jurisdiction by exclusive reliance on state law," citing three cases that do not concern SLUSA. (Pl. Br. 4.) However, purported reliance on state law is a requirement for removal (and dismissal) under SLUSA. <u>See</u> 15 U.S.C. § 78bb(f)(1). Moreover, the Second Circuit recently held in <u>Romano v. Kazacos</u> that "courts look beyond the face of an 'artfully pled' complaint to determine whether plaintiff has clothed a federal law claim in state garb by pleading state law claims that actually arise under federal law," and on that basis found that SLUSA applied and affirmed dismissal of the complaint. -- F.3d --, 2010 WL 2574143, at *4 (2d Cir. June 29, 2010) (internal quotation omitted).

Market System of the Nasdaq Stock Market."  15 U.S.C. §§ 77r(b)(1)(A), 78bb(f)(5)(E).

Plaintiff alleges that ROAC "is listed on the NASDAQ Global Market" (Compl. ¶ 8) and "does

not contest that the ROAC stock is a covered security" (Pl. Br. 9).

**(5)  Plaintiff Alleges Material Omissions "In Connection With" The**

**Purchase Or Sale Of Covered Securities.**  Plaintiff also does not contest that the material

omissions alleged by Plaintiff are "in connection with" the sale or purchase of securities, under

the Supreme Court's "broad construction" of SLUSA set forth in Dabit, 547 U.S. at 85-86

(finding that SLUSA applies where holders of securities -- not just purchasers and sellers --

allege misrepresentations and omissions).  See also Fisher v. Kanas, 487 F. Supp. 2d 270, 280

(E.D.N.Y. 2007), aff'd 288 Fed. Appx. 721 (2d Cir. 2008) (SLUSA "only requires some

'connection' between a misrepresentation and stock").  A purported shareholder class action

brought, as here, in connection with a proposed transaction is removable under SLUSA.  See

Phillips v. Harrah's Entertainment, Inc., No. 2:06-cv-1356 PMP-LRL, 2007 WL 556954, at *3

(D. Nev. Feb. 15, 2007) (removal under SLUSA was proper where shareholder brought putative

class actions against company and its officers and directors for "considering an offer" to buy

outstanding company stock, "despite an allegedly higher share value," "without first retaining

independent financial advisors and disclosing material facts related to the transaction").[4]

---

[4]    Plaintiff argues that Phillips is somehow distinguishable because the plaintiff in that case
did not seek remand under the Delaware carve-out exception to SLUSA, and because parties in
that case later settled in state court.  (Pl. Br. 10 n.7.)  But that makes no sense:  the district court
plainly found that it had jurisdiction because SLUSA applied to the case.  The Phillips plaintiffs'
failure to advance a meritless argument does nothing to undermine the district court's finding of
jurisdiction (nor do agreements relating to the parties' settlement).

## II.   PLAINTIFF'S ASSERTION THAT THE "DELAWARE CARVE-OUT" SAVES HIS CLAIMS FAILS BECAUSE THE PROPOSED TRANSACTION HAS NOT OCCURRED, NOR HAS THERE BEEN ANY AGREEMENT OR SOLICITATION OF SHAREHOLDER APPROVAL

Conceding (as he must) that the five requirements for SLUSA preclusion are present, Plaintiff argues instead (Pl. Br. 4-8) that the exception to SLUSA under 15 U.S.C. § 78bb(f)(3)(A)(ii) (the "Delaware carve-out") warrants remand.  The Delaware carve-out "carefully exempts from [SLUSA's] operation certain class actions based on the law of the State in which the issuer of the covered security is incorporated."  Dabit, 547 U.S. at 87.  The Delaware carve-out does not prevent SLUSA from applying to actions, such as this, alleging fraudulent conduct in connection with the purchase and sale of publicly traded securities: "federal law, not state law, has long been the principal vehicle for asserting class-action securities fraud claims."  Id. at 88.

Under the Delaware carve-out,

A covered class action [may be maintained in state court] if it involves --

(I)   the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

(II)   any recommendation, position, or other communication with respect to the sale of securities of an issuer that --

    (aa)   is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

    (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 78bb(f)(3)(A)(ii).

By their terms, neither of these SLUSA exceptions apply to the present action.

A.   **The First Carve-Out Does Not Apply
        <u>Because There Has Been No Purchase Or Sale Of Securities</u>**

Plaintiff argues that the first carve-out applies here because "Plaintiff's claims arise out of the Proposed Transaction in which the Swenson Group has proposed to purchase all of the securities of ROAC from the current holders of ROAC common stock."  (Pl. Br. 6.) Tellingly, however, Plaintiff fails to cite any authority providing that a <u>proposed</u> transaction -- <u>i.e.</u>, one that involves no actual purchase or sale -- is subject to the carve-out.  Of course not:  the first carve-out requires that the suit "involve" "the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer," 15 U.S.C. § 78bb(f)(3)(A)(ii)(I), and where, as here, there has been no "purchase or sale of securities," the carve-out does not apply.  <u>Atkinson v. Morgan Asset Mgmt., Inc.</u>, 664 F. Supp. 2d 898, 904-05 (W.D. Tenn. 2009) is a recent case precisely on point, but not cited by Mr. Semon.

In <u>Atkinson</u>, shareholders in a fund brought a putative class action against the fund and its managers alleging breach of state fiduciary duty law based upon purported misrepresentations and omissions in the fund registration statement and prospectus, which misrepresentations and omissions allegedly caused the shareholders to retain their stock rather than selling it, thereby incurring losses.  <u>Id.</u> at 902.  The defendants removed the case to federal court pursuant to SLUSA, and on plaintiffs' motion to remand, the court rejected plaintiffs' argument that the first carve-out applies.  The Court explained that because the suit did not involve any purchase or sale of securities, 15 U.S.C. § 78bb(f)(3)(A)(ii)(I) did not apply:

> Plaintiffs do not complain that, during the stated class period, they purchased or sold shares of the funds because of misleading information Defendants provided. Plaintiffs' complaint is that they *would have* sold their shares if the Defendants had not made material omissions in their disclosures.  <u>The plain text of the statute excludes Plaintiffs' claims from the first carve-out.</u>

Id. at 904 (italics in original, underscoring added).  The court further found that "[b]roadly interpreting the phrase 'involves the purchase or sale of securities' in the first Delaware carve-out would also contravene the Supreme Court's holding in Dabit that courts are to read SLUSA's preclusion provisions broadly."  Id. at 105 (citing Dabit, 547 U.S. at 88).  Since the action fell under SLUSA, the court entered an order of dismissal with prejudice.  Id. at 907.

Under the plain text of SLUSA and just like in Atkinson, Plaintiff's claims do not "involve" the "purchase or sale of securities" -- rather, they only involve the possible future purchase or sale of securities -- and accordingly, the first carve-out does not apply.  Id.

**B.     The Second Carve-Out Does Not Apply
Because This Action Does Not Involve Any
Communication Concerning Shareholder Voting Decisions**

The second carve-out applies to suits that "involve" a recommendation or other communication from an issuer to a stockholder "with respect to the sale of securities of an issuer" that "concerns decisions of such equity holders with respect to voting their securities . . . ."  15 U.S.C. § 78bb(f)(3)(A)(ii)(II).  Plaintiff argues that the May 7, 2010 press release is a "communication" bringing this action within the second carve-out.  (Pl. Br. 8.)  However, the press release does not involve decisions of shareholders "with respect to voting their securities."  How could it?  There is nothing for shareholders to vote on.  The proposed transaction has not been agreed to or approved, much less submitted to a vote of shareholders.[5]  A communication that does not pertain to shareholder decision-making cannot give rise to the

---

[5]     Plaintiff's assertion that the press release "ultimately concerns decisions of the equity security holders with respect to the eventual vote of their securities" (Pl. Br. 8 (emphasis added)) slices the baloney a bit too thin:  there may never be any transaction or vote.  This assertion highlights in stark relief the entirely premature nature of the whole case!

second carve-out.  See Proctor v. Vishnay Intertechnology, Inc., No. C 06-04134 JF, 2007 WL 518616, at *1 (N.D. Cal. Feb. 13, 2007).

In Proctor, Vishnay acquired Siliconix, and former shareholders of Siliconix sued the companies, directors and officers and Siliconix's auditor, Ernst & Young, alleging that false financial reports generated by Ernst & Young drove down the value of company stock, thereby depriving shareholders of the true value of their stock, which they sold as part of the acquisition. 2007 WL 518616, at *1.  After removal on SLUSA grounds, the court rejected the plaintiffs' argument that remand was warranted under the second carve-out, finding that the allegedly false financial reports were too far removed from the shareholders' voting decisions:

> [T]his Court concludes that the Delaware carve-out relates only to communications that are *directly* related to the exercise of shareholders' voting rights in the context of tender or exchange offers, or dissenter or appraisal rights. A holding that communications made over an extended period of time and alleged to have some ultimate impact on a shareholder's decision also fall within the exception would render the exception far too broad.

Id. at *7 (emphasis added).

Fisher, 487 F. Supp. 2d at 280, is also on point.  In Fisher, plaintiffs alleged that they were deprived of the full value of their stock, which they sold in connection with a corporate merger as a result of misrepresentations and omissions in company proxy statements that failed to reveal "change of control" policies providing for excessive executive compensation. The court dismissed the case pursuant to SLUSA and found that the Delaware carve-out did not apply because the proxy statements did not directly concern shareholder decision-making -- notwithstanding that, as here, the alleged misstatements were made "in connection with" the sale of securities:

> The Court's finding that the SLUSA applies because a misrepresentation was made "in connection with" the purchase or sale of a covered security may seem inconsistent with the determination that the Delaware carve-out does not apply because there was no recommendation or communication "regarding" the sale of

> securities.   However, . . . the Supreme Court broadly construes the "in connection" language of the SLUSA.   The SLUSA does not require that the defendants make a misrepresentation regarding the sale of stock.   It only requires some 'connection' between a misrepresentation and stock.   The Delaware carve-out requires a communication "regarding" the sale of securities.   Although for SLUSA purposes, there is a sufficient "connection" between the misrepresentation in the proxy statements, the executive compensation and the decline in stock prices, it is undisputed that this case does not involve a communication directly discussing the sale of securities.

Id.[6]

The May 7, 2010 press release is even more removed from shareholder decision-making than the financial reports in Proctor or the proxy statements in Fisher:  no acquisition has occurred here, nor is there any agreement providing for an acquisition nor any request for shareholder approval.  ROAC simply reported publicly that an unsolicited acquisition proposal had been made by Swenson Granite, and that the ROAC Board had formed a Special Committee of independent directors to evaluate the proposal and determine how to proceed in the best interests of ROAC's shareholders.  Indeed, the press release cautioned that no decisions had been made by the Special Committee or ROAC's Board of Directors with respect to the Swenson Granite proposal and that there could be no assurance that the proposal would lead to any agreement or to any transaction.  Since the May 7, 2010 press release did not touch upon any shareholder decision to be made, the second carve-out does not apply.  See also Zoren v. Genesis

---

[6]    Plaintiff incorrectly argues that Fisher is inapplicable because "the claim did not involve a 'purchase or sale of securities by the issuer or an affiliate of the issuer' and importantly, the plaintiff sold his shares before the buyout."  (Pl. Br. 10 n.7.)  Plaintiff's first distinction is irrelevant, since it had no bearing on the court's finding that the second Delaware carve-out did not apply.  Rather, the court found that, as here, the alleged omissions did not relate to shareholder decision-making regarding voting their securities.  Plaintiff's second point (i.e., "plaintiff sold his shares before the buyout") is just wrong:  the very basis of plaintiff's suit in Fisher was that "stockholders would have received 'proportionately greater compensation for the North Fork shares from Capital One' if the Defendants had not received such excessive compensation."  Fisher, 487 F. Supp. 2d at 273.

Energy, L.P., 195 F. Supp. 2d 598, 604 (D. Del. 2002) (in shareholder suit alleging reduced share value due to IPOs and restructuring, denying motion to remand and granting motion to dismiss under SLUSA, finding that the Delaware carve-out did not apply because IPO prospectuses "did not concern decisions of . . . equity holders 'with respect to voting their securities . . . .'").

    **C.**    **Plaintiff Fails To Cite Any Case In Which**
                    **The Delaware Carve-Out Was Found To Apply To A *Proposed* Transaction**

Plaintiff cites no case at all in support of his argument that the first Delaware carve-out precludes SLUSA.  That is because, as set forth <u>supra</u> at Point II.A, where, as here, there has been no "purchase or sale of securities," the first carve-out does not apply.

With respect to the second carve-out, Plaintiff cites five cases, none of which support the proposition that a <u>proposed</u> transaction that has not been agreed to or board-approved is subject to the exception.  Each of those cases involved, unlike here, a purchase or sale of securities that had already occurred or was imminent, as well as a <u>communication specifically seeking shareholder approval</u>.  Those cases are inapposite.

For instance, in <u>Ind. Elec. Workers Pension Trust Fund v. Millard</u> (Pl. Br. 7-8), shareholders sued the company, officers and directors for allegedly failing to disclose in proxy statements a scheme to backdate stock options, which omissions caused shareholders to vote to authorize a stock option plan.  No. 07 Civ. 172 (JGK), 2007 WL 2141697, at *1 (S.D.N.Y. July 25, 2007).  After removal under SLUSA, the court granted plaintiffs' motion to remand on the basis that the Delaware carve-out applied in light of the proxy statements.  <u>Id.</u> at *9.  <u>Millard</u> is completely inapplicable, because unlike here, (i) shareholders were issued proxy statements (the very <u>purpose</u> of which is to provide information with respect to shareholder solicitation, <u>see</u> 17 C.F.R. 240.14a-3), (ii) a shareholder vote actually occurred, and (iii) the disputed transaction actually occurred.  <u>Millard</u>, 2007 WL 2141697, at *1.

The other four cases relied on by Plaintiff (at Pl. Br. 7-8) are inapposite for similar reasons:

- <u>Nickell v. Shanahan</u> concerned alleged misrepresentations in a registration statement filed with the SEC and mailed to shareholders in connection with a merger agreement and shareholder vote that "induced plaintiff and the members of the class to approve the merger and sell their [company] stock." No. 4:09cv931 SNLJ, 2010 WL 199957, at *1, 3 (E.D. Mo. Jan. 13, 2010).

- <u>Weitman v. Tutor</u> concerned alleged misrepresentations in proxy statements that plaintiffs claimed induced shareholders to vote on and approve a merger. 588 F. Supp. 2d 133, 136, 139 (D. Mass. 2008).  The proxy statements were found to invoke the Delaware carve-out "because they were meant to inform the . . . shareholders about the details and circumstances surrounding the merger on which they were asked to vote."  <u>Id.</u> at 140.

- <u>Superior Partners v. Chang</u> concerned alleged misrepresentations in a preliminary proxy statement and proxy statement seeking a shareholder vote approving a merger that had been agreed to and board-approved.  471 F. Supp. 2d 750, 751-52 (S.D. Tex. 2007).

- <u>Rubery v. Radian Group, Inc.</u> concerned alleged misrepresentations in a press release announcing that a proposed merger had been "unanimously approved by each company's board of directors" and agreed to, was subject to a shareholder vote for approval and, in the case of a favorable vote, would lead to "superior shareholder returns."  Civ. No. 07-1068, 2007 WL 1575211, at *5 (E.D. Pa. May 31, 2007).

Plaintiff's failure to cite any applicable precedent supporting his bold assertion that "this is exactly the kind of action Congress envisioned when it determined that it was appropriate to preserve such actions to state court" (Pl. Br. 8) -- <u>i.e.</u>, an action involving a <u>proposed</u> transaction that has not been agreed to, approved or recommended to shareholders -- plainly exposes the inaccuracy of his argument.

## III.   <u>PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY</u>

Once the court determines that the action "falls within the scope of SLUSA . . . SLUSA <u>requires</u> that [the] [c]ourt . . . dismiss it."  <u>Cinicolo v. Morgan Stanley Dean Witter & Co.</u>, No. 01 Civ. 6940 (GBD), 2004 WL 2848542, *6 (S.D.N.Y. Dec. 9, 2004) (emphasis added)

(denying motion to remand and granting motion to dismiss).  See also Lander, 251 F.3d at 110

(2d Cir. 2001) (because case was properly removed, "the text of SLUSA calls for dismissal of

the action"); Fisher v. Kanas, 288 Fed. Appx. 721, 723, 2008 WL 2645479, at *2 (2d Cir. July 7,

2008) (affirming denial of motion to remand and dismissal because claims fell under SLUSA);

Romano, 2010 WL 2574143, at *9 (same).[7]  Since Plaintiff cannot establish that removal was

improper, immediate dismissal is warranted.[8]

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion to Remand should be denied,

and Plaintiff's Complaint should be dismissed in its entirety.

Dated:  July 12, 2010
      Burlington, Vermont

James R. Carroll (admitted pro hac vice)
Nicholas I. Leitzes (admitted pro hac vice)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800
jcarroll@skadden.com
nleitzes@skadden.com

Respectfully submitted,

 /s/  Samuel Hoar, Jr.          
Samuel Hoar, Jr.
DINSE, KNAPP AND
   MCANDREW, P.C.
P.O. Box 988
209 Battery Street
Burlington, Vermont 05402-0988
(802) 864-5751
shoar@dinse.com

Counsel for Defendants
James L. Fox, Pamela G. Sheiffer
and Frederick E. Webster, Jr.

---

[7]    Lander, Fisher and Romano are just three examples (among many SLUSA cases) why Plaintiff's pat, sweeping assertion that "[t]he Second Circuit has made clear that lawsuits seeking to enforce the rights of securities holders are immune from removal and must be remanded" (Pl. Br. 9-10) is incorrect and should be disregarded.  Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp., 603 F.3d 23, 28-31 (2d Cir. 2010) relied on by Plaintiff for this point does not concern SLUSA and is inapposite.

[8]    Plaintiff "does not contest" that "covered securities" are at issue here.  (Pl. Br. 9.)  As a result, this Court need not determine whether CAFA applies, because cases concerning "covered securities" are not subject to CAFA.  See 28 U.S.C. § 1332(d)(9)(A).

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed electronically and is available for viewing and downloading from the ECF system.  I further certify that the following counsel of record will be served by the ECF system:

James W. Spink
SPINK & MILLER, PLC
One Lawson Lane
Burlington, Vermont 05401
(802) 864-1100
jspink@spinkmiller.com

Counsel for Defendants
Rock of Ages Corporation and Laura Plude

Sean M. Gorman
SHEEHAN, PHINNEY,
     BASS + GREEN, P.A.
1000 Elm Street, 17th Floor
Manchester, NH 03101
(603) 668-0300
sgorman@sheehan.com

Counsel for Defendant
Swenson Granite Company, LLC

Walter E. Judge Jr.
DOWNS, RACHLIN &
     MARTIN, PLLC
Courthouse Plaza
199 Main Street
P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375
wjudge@drm.com

Counsel for Defendants
Kurt Swenson, Donald LaBonte,
Richard Kimball, and Charles Waite

I further certify that on July 12, 2010, I served a copy of the foregoing document on the following counsel of record by first class mail, postage prepaid:

Alan L. Reische (pro hac vice
     motion to be filed)
Edward A. Haffer (admitted pro hac vice)
SHEEHAN, PHINNEY,
     BASS + GREEN, P.A.
1000 Elm Street, 17th Floor
Manchester, NH 03101
(603) 668-0300
areische@sheehan.com
ehaffer@sheehan.com

Counsel for Defendant
Swenson Granite Company, LLC

Wilbur A. Glahn III (admitted pro hac vice)
MCLANE, GRAF, RAULERSON &
     MIDDLETON, P.A.
900 Elm Street
P.O. Box 326
Manchester, NH  03105
(603) 625-6464
bill.glahn@mclane.com

Counsel for Defendants
Rock of Ages Corporation and Laura Plude

Daniel P. Richardson, Esq.
TARRANT, GILLES, MERRIMAN &
     RICHARDSON
44 East State Street
P. O. Box 1440
Montpelier, VT 05601-1440

Counsel for Plaintiff

Dated: July 12, 2010

/s/  Samuel Hoar, Jr.
Samuel Hoar, Jr.