# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

TODD SEMON, on behalf of himself, and all
others similarly situated,

                     Plaintiff,

     v.

ROCK OF AGES CORPORATION,
SWENSON GRANITE COMPANY, LLC,
KURT M. SWENSON, JAMES L. FOX,
RICHARD C. KIMBALL, DONALD
LABONTE, LAURA A. PLUDE, PAMELA G.
SHEIFFER, CHARLES M. WAITE, and
FREDERICK E. WEBSTER JR.,

                   Defendants.

Case No. 5:10cv00143 - CR

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... ii

I.    PRELIMINARY STATEMENT ................................................ 1

II.   STATEMENT OF RELEVANT FACTS ........................................ 2

III.  ARGUMENT ...................................................................... 5

  A.  Relevant Legal Standards ................................................ 5

  B.  Defendants' Motions to Dismiss Must be Denied Because This Court Lacks
      Subject Matter Jurisdiction ............................................ 6

  C.  SLUSA Requires Remand, Not Dismissal, of Plaintiff's Claims ..................... 6

    1.  Plaintiff's Claims are Maintainable Under the "Delaware Carve-Out" .......... 6

      a.  The "Delaware Carve-Out" Does Not Require a Completed Transaction .............. 10

    2.  Plaintiff's Claims Are Not Preempted By SLUSA ...................... 13

  D.  Even If This Court Finds SLUSA Preemption, Plaintiff Should Be Allowed to
      Replead His Claims ...................................................... 15

  E.  Plaintiff Has Standing and His Claims Are Ripe ............................ 16

    1.  Actual Harm Does Not Have Had to Have Occurred for Plaintiff to
        Have Standing to Bring this Action ................................ 16

    2.  Plaintiff and the other ROAC Shareholders Have Already Been Harmed
        from Defendants' Actions ........................................ 17

IV.   CONCLUSION ................................................................ 22

## TABLE OF AUTHORITIES

### CASES

*Alessi v. Beracha*,
    244 F. Supp. 2d 354 (D. Del. 2003) ............................................................9, 10

*American Gen. Corp. v. Texas Air Corp.*,
    Nos. 8390, 8406, 8650, 8805, 1987 Del. Ch. LEXIS 382 (Del. Ch. Feb. 5, 1987) ..........21

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .........................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).....................................6

*Bershad v. Curtiss-Wright Corp.*,
    535 A.2d 840 (Del. 1987) .............................................................................19

*Breakaway Solutions, Inc. v. Morgan Stanley & Co.*,
    No. 19522, 2004 Del. Ch. LEXIS 125 (Del. Ch. Aug. 27, 2004).....................................13

*Burke v. Vermont*,
    No. 1:09V-77, 2009 U.S. Dist. LEXIS 116204 (D. Vt. Dec. 14, 2009) .........................5, 6

*In re Countrywide Corp. S'holders Litig.*,
    Consol. C.A. No. 3464-VCN, 2009 Del. Ch. LEXIS 155 (Del. Ch. Aug. 24, 2009) ........11

*Derdiger v. Tallman*,
    75 F. Supp. 2d 322 (D. Del. 1999)..................................................................14

*Fed. Ins. Co. v. Tyco Int'l Ltd.*,
    422 F. Supp. 2d 357 (S.D.N.Y. 2006).............................................................12

*Fisher v. Kanas*,
    487 F. Supp. 2d 270 (E.D.N.Y. 2007) .........................................................12, 15

*Friedlander v. Port Jewish Ctr.*,
    588 F. Supp. 2d 428 (E.D.N.Y. 2008) ............................................................5

*Greaves v. McAuley*,
    264 F. Supp. 2d 1078 (N.D. Ga. 2003).......................................................9, 11

*Hernandez v. Coughlin*,
    18 F.3d 133 (2d Cir. 1994)...........................................................................5

*Ind. Elec. Workers Pension Trust Fund v. Millard*,
    No. 07 Civ. 172 (JGK), 2007 U.S. Dist. LEXIS 54203 (S.D.N.Y. Jul. 24, 2007) ..8, 12, 15

*Kahn v. Lynch Commc'n Sys.*,
    638 A.2d 1110 (Del. 1994) ........................................................................................19

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007)........................................................................................5

*Klein v. Southwest Gas Corp.*,
    No. 99-1004-IEG (CGA), 1999 U.S. Dist. LEXIS 22979 (S.D. Cal. Aug. 3, 1999) ........14

*Lazar v. Gregerson*,
    No. C 02-0652 SI, 2002 U.S. Dist. LEXIS 6152 (N.D. Cal. Apr. 8, 2002)......................14

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)........................................................................................5

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
    No. 5402-VCS, 2010 Del. Ch. LEXIS 115 (Del. Ch. May 13, 2010) ..............................11

*Moran v. Pallito*,
    No. 1:09-CV-227, 2010 U.S. Dist. LEXIS 53048 (D. Vt. May 7, 2010) ..........................6

*Nickell v. Shanahan*,
    No. 4:09CV931 SNLJ, 2010 U.S. Dist. LEXIS 2481 (E.D. Mo. Jan 13, 2010)................8

*Phillips v. Harrah's Entertainment, Inc.*,
    2:06-CV-01356-PMP-LRL, 2007 WL 556954 (D. Nev. Feb. 15, 2007) ........................14

*Phillips v. Reckson Assoc. Realty Corp.*,
    No. 06-CV-5971 (JFB) (AKT),
    2006 U.S. Dist. LEXIS 83288 (E.D.N.Y. Nov. 15, 2006).................................................12

*Police & Fire Ret. Sys. v. Bernal*,
    No. 4663 CC, 2009 Del. Ch. LEXIS 111 (Del. Ch. Jun. 26, 2009)..................................16

*In re Pure Resources, Inc. S'holders Litig.*,
    808 A.2d 421 (Del. Ch. 2002)......................................................................................17

*Ring v. AXA Fin., Inc.*,
    483 F.3d 95 (2d Cir. 2007)...........................................................................................13

*Rubery v. Radian Group, Inc.*,

No. 07-1068, 2007 U.S. Dist. LEXIS 39372 (E.D. Pa. May 30, 2007).........................9, 11

*Simon v. Stang*,
    No. C 10-00262 JF (HRL), 2010 U.S. Dist. LEXIS 46531 (N.D. Cal. Apr. 8, 2010).......15

*Superior Partners v. Chang*,
    471 F. Supp. 2d 750 (S.D. Tex. 2007) .............................................................................8

*In re Transkaryotic Therapies, Inc.*,
    954 A.2d 346 (Del. Ch. 2008)..........................................................................................16

*U.S. Mortg. Inc. v. Saxton*,
    494 F. 3d 833 (9th Cir. 2007) ...........................................................................................15

*Walker v. Teachers Ins. & Annuity Ass'n of Am.*,
    No. 1:09-CV-190, 2010 U.S. Dist. LEXIS 35295 (D. Vt. Apr. 9, 2010) ...........................5

*Weitman v. Tutor*,
    588 F. Supp. 2d 133 (D. Mass. 2008) ..............................................................................11

## OTHER AUTHORITIES

S. Rep. 105-185 (May 4, 1998)........................................................................................10

## STATUTES AND RULES

17 C.F.R. 240.10b-5.........................................................................................................14

15 U.S.C. §77p.....................................................................................................................7

28 U.S.C. §1331....................................................................................................................6

28 U.S.C. §1441(b) ..............................................................................................................4

28 U.S.C. §1447(c) ..............................................................................................................6

Class Action Fairness Act of 2005, 28 U.S.C. §1332(d) ...............................................4,6

Fed. R. Civ. P. 12(b)(1)........................................................................................................5

Fed. R. Civ. P. 12(b)(6)........................................................................................................5

Fed. R. Civ. P. 15(a) ..........................................................................................................22

Securities Litigation Uniform Standard Act of 1998, 15 U.S.C. § 78bb *et seq.*..................... passim

Plaintiff respectfully submits this memorandum in opposition to defendants' motions to dismiss his complaint (the "Complaint"). Defendants have not met their burden of demonstrating that (i) this Court has subject matter jurisdiction over the dispute between the parties; or (ii) the Complaint fails to state a claim upon which relief can be granted; or (iii) plaintiff's claims are subject to preclusion under the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 78bb ("SLUSA"). Therefore, defendants' motions should be denied, and this action (the "Action") must be remanded to the State of Vermont Washington County Superior Court for adjudication.

## I.   PRELIMINARY STATEMENT

The Complaint asserts breach of fiduciary duty claims exclusively under Vermont state law based on defendants' wrongful conduct related to the announcement by Rock of Ages Corporation ("ROAC" or the "Company") that Swenson Granite Company, LLC ("Swenson Granite") and certain affiliated persons, who together control ROAC, had made a proposal to purchase all of the outstanding shares of the Company for $4.38 per share in cash. In connection with this proposed transaction, defendants have breached, and will continue to breach, their fiduciary duties to the ROAC shareholders unless enjoined from doing so. This Action seeks to remedy this wrongdoing on behalf of ROAC's public shareholders (the "Class"). Defendants now seek to dismiss the entirety of the Complaint primarily based on an incorrect interpretation of SLUSA, and an inaccurate description of plaintiff's claims.

As a threshold matter, the Action must be remanded, as this Court lacks subject matter jurisdiction over plaintiff's exclusively state law claims. Defendants do not, and cannot, establish that plaintiff's claims meet the requirements for preclusion under SLUSA, and in any event, plaintiff's claims are expressly "carved-out" of, and "preserved" by, SLUSA.

Defendants' contention that SLUSA's express "Delaware carve-out" does not *yet* apply because no merger transaction has occurred is devoid of both legal and logical support. As detailed below, numerous courts have applied the Delaware carve-out to remand breach of fiduciary duty cases challenging mergers *before* they are consummated.

Even if this Court had subject matter jurisdiction, defendants' claim that, because no transaction has yet occurred, plaintiff has no standing to bring the Action, is contrary to long-established law. The Action primarily seeks injunctive relief to prevent the proposed transaction from occurring because once it is consummated the harm to plaintiff and the Class he seeks to represent would be "irreparable." Under defendants' proposed standard, such common injunctive relief actions would be nullified.

Moreover, even if actual harm had to have already occurred for plaintiff's claim to be deemed "ripe," the Complaint alleges facts showing that such harm has, in fact, happened. For example, as part of the alleged plan and scheme for Swenson Granite to acquire ROAC's remaining shares "on the cheap," defendants have reincorporated ROAC from Delaware to Vermont making it easier for Swenson Granite and its affiliated persons to acquire the Company as detailed herein. Moreover, Swenson Granite's offer has artificially "capped" ROAC's share price. Therefore, the Complaint adequately alleges actual injury that has already occurred, in addition to seeking to stop the proposed transaction before harm becomes irreparable, and thus the Action is not premature.

## II.      STATEMENT OF RELEVANT FACTS

On May 19, 2010, Plaintiff Todd Semon, a ROAC shareholder with approximately 20,000 ROAC shares ("Plaintiff"), commenced this Action in the State of Vermont Washington County Superior Court against James L. Fox, Pamela G. Sheiffer, Frederick E. Webster Jr. (the

"Committee Defendants"), Kurt M. Swenson, Richard C. Kimball, Donald Labonte, Laura A. Plude, and Charles M. Waite (collectively with the Committee Defendants, the "Individual Defendants"), ROAC, Swenson Granite (collectively with the Individual Defendants, the "Defendants").  The Complaint asserts claims exclusively under Vermont law for breach of fiduciary duties, and aiding and abetting the breaches of fiduciary duties owed by Defendants to Plaintiff and members of the Class.

The Complaint was filed subsequent to the May 7, 2010, announcement by ROAC that its Board of Directors (the "Board") had received a proposal from Swenson Granite led by Kurt Swenson, the Chairman of Swenson, and non-executive Chairman of ROAC, his brother, Kevin Swenson, and Robert Pope, President and Chief Executive Officer of Swenson, as well as ROAC Board members, Richard C. Kimball  ("Kimball"), and Charles M. Waite ("Waite")[1], to purchase all of the outstanding shares of the Company for $4.38 per share in cash (the "Proposed Transaction").  (¶ 2.)[2]

According to the May 7, 2010 press release announcing the Proposed Transaction, Kurt M. Swenson, together with his brother, Kevin Swenson, and Robert Pope, own approximately 29% of all outstanding shares of common stock of ROAC, and control approximately 70% of the voting power of all outstanding capital stock of ROAC.  (¶ 26.)  The Swenson Group controls approximately 83% of ROAC's Class B Common Stock.  (¶ 6.)

In particular, the Complaint alleges that "[t]his action arises out of an unlawful scheme and plan to enable Kurt M. Swenson, Kevin Swenson, and Robert Pope ("Pope")… to acquire

---

[1]  Swenson Granite, Kurt Swenson, Kevin Swenson, Robert Pope, ROAC directors Kimball and Waite, and Swenson Granite directors Scott Herrick and Jake Swenson are collectively referred to herein as the "Swenson Group."

[2]  References to specific paragraphs in the Complaint are cited to herein as "¶ ___."

the Company for grossly inadequate consideration and in breach of the individual defendants' fiduciary duties." (¶ 1.)  The Complaint further asserts that the Individual Defendants "have participated, and/or reasonably expect to participate as a result of their relationships with Kurt Swenson and/or the Company, in unfair business practices and self-dealing toward Plaintiff and other members of the Class and have engaged in and substantially assisted and aided each other in breach of the fiduciary duties owed by them to the Class."  (¶ 34.)

Pursuant to a Notice of Removal filed June 14, 2010, Defendants removed the Vermont State Court Action to this Court.  (Dkt. No. 1.)  Defendants claimed that the Vermont State Court Action is appropriate for removal under 28 U.S.C. §1441(b) as an action arising under the laws of the United States because the claims are supposedly preempted by SLUSA, 15 U.S.C. §78bb *et seq.*  Secondly, Defendants claimed that, in the alternative, this Court has jurisdiction pursuant to Section 4 of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d).

Plaintiff immediately filed a motion to remand this Action back to the State of Vermont Washington County Superior Court, dated June 24, 2010.  (Dkt. No. 16.)  As demonstrated in Plaintiff's Motion for Remand, Defendants erred in their conclusions that the Action is removable to this Court.  Both statutes relied upon by Defendants as grounds for removal have express carve-out provisions which carefully, and specifically, exempt actions such as this one filed in Vermont State Court.

Defendants filed motions to dismiss Plaintiff's Complaint on June 21, 2010. (Dkt. Nos. 9, 10, and 11.)  The Committee Defendants submitted a memorandum in support of their motion ("Def. Mem."), and the remaining defendants expressly rely on the briefing of the Committee Defendants.  Defendants contend that SLUSA preempts Plaintiff's claims based on state law, and argue that Plaintiff's complaint fails to state a claim.  Defendants also cite 12(b)(1), failure of

subject matter jurisdiction, as a basis for dismissal.  Plaintiff agrees that this Court does not have subject matter jurisdiction, but insists that this factor requires remand to State Court for the reasons set forth below and in Plaintiff's Memorandum in Support of his Motion for Remand.

## III.   ARGUMENT

### A.      Relevant Legal Standards

Defendants base their motions to dismiss the Complaint on Fed. R. Civ. P. 12(b)(1) and (6), as well as SLUSA, 15 U.S.C. § 78bb.  Plaintiff agrees that this Court lacks subject matter jurisdiction, but as detailed below, the necessary result on this point, as well as the others argued by Defendants, is remand of the Action to the State of Vermont Washington County Superior Court.

"Under either rule [Fed. R. Civ. P. 12(b)(1) or 12(b)(6)], the standard is essentially the same, 'except that a [party] asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'"  *Burke v. Vermont*, No. 1:09-cv-77, 2009 U.S. Dist. LEXIS 116204, at *4 (D. Vt. Dec. 14, 2009), *citing Friedlander v. Port Jewish Ctr.*, 588 F. Supp. 2d 428, 430 (E.D.N.Y. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)) (internal quotations omitted).  "When deciding a motion to dismiss under these rules, the Court must accept the allegations of fact in the complaint as true, drawing all reasonable inferences in the plaintiff's favor."  *Burke*, 2009 U.S. Dist. LEXIS 116204, at *4-5, *citing Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994); *Walker v. Teachers Ins. & Annuity Ass'n of Am.*, No. 1:09-cv-190, No. 1:09-cv-190, 2010 U.S. Dist. LEXIS 35295, at *4 (D. Vt. Apr. 9, 2010), citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) ("The Court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff.").  "The motion should be denied if the complaint pleads 'enough facts

to state a claim to relief that is plausible on its face.'"  *Burke*, 2009 U.S. Dist. LEXIS 116204, at

*5, *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929

(2007).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

2009 U.S. Dist. LEXIS 116204, at *5, quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L.

Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556).  "This standard does not require

'heightened fact pleading of specifics, but only enough facts to state a claim to relief that is

plausible on its face.'"  *Moran v. Pallito,* No. 1:09-cv-227, 2010 U.S. Dist. LEXIS 53048, at *4

(D. Vt. May 7, 2010)*, quoting Twombly*, 550 U.S. at 570.

> **B.    Defendants' Motions to Dismiss Must be Denied Because This Court Lacks Subject Matter Jurisdiction**

As detailed in Plaintiff's Memorandum in Support of his Motion for Remand, this Court

does not have original jurisdiction over this case pursuant to 28 U.S.C. §1331.  Further, as

detailed in Section C.1. below, Plaintiff's claims fall squarely within both definitional

subsections of the "Delaware carve-out" in §78bb(f)(3)(A)(ii) of actions that are preserved to

state courts (and the similar carve-out in CAFA 28 U.S.C. §1332(d)(9)).  The statute which

governs the procedure after removal, 28 U.S.C. §1447(c), provides that a district court is

required to remand any action over which it has no subject matter jurisdiction.

> **C.    SLUSA Requires Remand, Not Dismissal, of Plaintiff's Claims**

Contrary to Defendants' arguments, SLUSA does not preempt Plaintiff's claims.  Rather,

it requires remand of this Action to the State of Vermont Washington County Superior Court.

> **1.    Plaintiff's Claims are Maintainable Under the "Delaware Carve-Out"**

For the same reasons Plaintiff's claims are exempted from removal by SLUSA's

"Delaware carve-out" provision, they are exempted from SLUSA preemption under the carve-

out as well.  Defendants address the "Delaware carve-out" provision only briefly, and have not (and cannot) show that this directly on-point provision does not apply to Plaintiff's claims.

In fact, this Action is precisely the type of case which Congress expressly provided would **not** be removable/precluded by SLUSA, 15 U.S.C. §77p, 15 U.S.C. §78bb(f).  Under 15 U.S.C. §78bb(f)(3) (and its comparable provision under 15 U.S.C. §77p(d)(1)), Congress expressly reserved to state courts certain class actions.  Under section 78bb(f)(3), a "covered class action" based on the statutory or common law of the State in which the issuer is incorporated *may be maintained* if it involves:

> (I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
> (II) any recommendation, position, or other communication with respect to the sale of securities of an issuer that -
>> (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
>> (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

Thus, Congress explicitly preserved class actions that are based upon the statutory or common law of the State in which the issuer is incorporated or organized.  As clearly pled in the Complaint, ROAC is a Vermont corporation and the breach of fiduciary duty claims in the Vermont State Court Action are based exclusively upon Vermont law.

Further, the Action falls within both definitional subsections of the "Delaware carve-out" in §78bb(f)(3)(A)(ii) of actions that are preserved (even though only one is required).  Plaintiff meets the first prong of the carve-out by bringing claims concerning "the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer."  Plaintiffs' claims arise out of the Proposed Transaction in which the Swenson Group has proposed to purchase all of the securities of ROAC from the current holders

of ROAC common stock.  In this instance, Swenson Group is an affiliate of the issuer as the Group controls ROAC through the ownership of ROAC shares held by Kurt Swenson, Kevin Swenson and Robert Pope.  These three men own "approximately 29% of all outstanding shares of common stock of Rock of Ages, and control approximately 70% of the voting power of all outstanding capital stock of Rock of Ages."  (¶¶ 9, 26.)  Kurt Swenson is the Chairman of Swenson Granite and non-executive Chairman of the Board of ROAC (as well as the former CEO, and President of ROAC for 24 years), Kevin Swenson is the brother of Kurt Swenson, and Robert Pope is the President and Chief Executive Officer of Swenson Granite.  (¶¶ 2, 9.)

Further, Plaintiff's claims also fall under the second prong of the "Delaware carve-out."  "A covered class action that is based upon the law of the state in which the issuer is incorporated may be maintained under prong (II) if it meets three requirements: it must 'involve' (1) 'any recommendation, position, or other communication with respect to the sale of securities' of the issuer that (2) 'is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer' and that (3) 'concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.'"  *Ind. Elec. Workers Pension Trust Fund v. Millard*, No. 07 Civ. 172 (JGK), 2007 U.S. Dist. LEXIS 54203, at *11-12 (S.D.N.Y. Jul. 24, 2007), *citing Superior Partners v. Chang*, 471 F. Supp. 2d 750, 753 (S.D. Tex. 2007) (claims for breach of fiduciary duty based on preliminary proxy for acquisition by merger were remanded to state court under "Delaware carve-out").  *See also Nickell v. Shanahan*, No. 4:09-cv-931 SNLJ, 2010 U.S. Dist. LEXIS 2481 (E.D. Mo. Jan 13, 2010) ("Delaware carve-out" applied to shareholder class action alleging, *inter alia*, breach of fiduciary duty and aiding and abetting such breach, on behalf of former shareholders in connection with the acquisition of their shares; and removal under

SLUSA was improper and court on its own motion remanded case to state court); *Weitman v. Tutor*, 588 F. Supp. 2d 133, 137, 139 (D. Mass. 2008) (action for breach of fiduciary duty by majority shareholder in acquiring shares of minority shareholders is subject to "Delaware carve-out" and must be remanded to state court); *Rubery v. Radian Group, Inc.*, No. 07-cv-1068, 2007 U.S. Dist. LEXIS 39372, at *1-2, 12-16 (E.D. Pa. May 30, 2007) (class action for breach of fiduciary duty for agreeing to merger without soliciting other bids is not removable under SLUSA and is remanded to state court; press release announcing a merger is a "communication" within meaning of "Delaware carve-out").

Here, Plaintiff alleged wrongdoing that is based on a communication (the May 7, 2010 press release) by an issuer (ROAC) to holders of equity securities of the issuer (ROAC's public shareholders) which ultimately concerns decisions of the equity security holders with respect to an eventual vote of their securities (*i.e.* whether to approve the Proposed Transaction). The fact that the May 7 press release was "a communication with respect to the sale of securities of the issuer" is buttressed by the fact that shortly after it was issued, North Star Investment Management Corporation, a substantial investor owning 15.4% of ROAC's outstanding shares, filed a form 13D with the SEC attaching a letter to the Board responding to the press release about the Proposed Transaction and complaining about it precisely because it concerned decisions of ROAC equity holders with respect to voting their securities, acting in response to an exchange offer, and exercising dissenters' or appraisal rights. *See infra* at pp. 19-20. Thus, Plaintiff's claims fall within the "Delaware carve-out." *See Greaves v. McAuley*, 264 F. Supp. 2d 1078, 1083 (N.D. Ga. 2003) (press release that was intended to encourage shareholders to approve a proposed merger met the carve-out requirements).

In *Alessi v. Beracha*, 244 F. Supp. 2d 354, 359 (D. Del. 2003), the court observed

that "[t]he legislative history from the Senate Banking Committee discussing the Delaware

carve-out exceptions, while brief, is instructive:

> The SEC, as well as other commentators, also noted the need to exempt from the legislation shareholder-initiated litigation based on breach of fiduciary duty of disclosure, in connection with certain corporate action, that is found in the law of some states, most notably Delaware.

> The Committee is keenly aware of the importance of state corporate law, specifically those states that have laws that establish a fiduciary duty of disclosure. It is not the intent of the Committee in adopting this legislation to interfere with state law regarding the duties and performance of an issuer's directors or officers in connection with a purchase or sale of securities by the issuer or an affiliate from current shareholders or communicating with existing shareholders with respect to voting their shares, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

> S. Rep. 105-185, at 6 (May 4, 1998).

The gravamen of plaintiff's complaint in *Alessi*, as in this case, was the breach of

defendants' fiduciary duty under state law and "[t]herefore, the court conclude[d] that this is

exactly the type of action Congress intended to exempt from the preemption provisions of

SLUSA." *Id*. at 359.  Furthermore, the *Alessi* Court warned that "adopting [a] narrow

interpretation of the statutory language would permit corporations and directors to evade liability

by structuring their transactions to fall outside the traditional definition of a tender or exchange

offer.  Permitting such a manipulation would frustrate the purpose of § 77bb(f)(3)(A)(2) and

render the second Delaware carve-out exception virtually meaningless." *Id*. at 359.  Despite

Defendants' contentions to the contrary regarding the requirements for SLUSA preemption, this

is exactly the kind of action Congress envisioned when it determined that it was appropriate to

preserve such actions to state court.

### a.   The "Delaware Carve-Out" Does Not Require a Completed Transaction

Defendants mention in a footnote that "[s]ince the proposed transaction has been

neither sought [n]or attained, none of the exceptions to removal under SLUSA apply to this case." Def. Mem. p. 9 n.6.  Defendants are wrong.  No provision of SLUSA requires a consummated transaction, and for good reason, since that would mean that shareholders could not seek to enjoin such transactions in state law cases.[3]  On the contrary, numerous federal courts have applied the "Delaware carve-out" to remand transaction-related cases back to state courts prior to the consummation of these transactions.  *See, e.g., Weitman*, 588 F. Supp. 2d  133 (shareholder sued to enjoin a merger); *Rubery*, 2007 U.S. Dist. LEXIS 39372 (plaintiff based her allegations exclusively on a proposed merger); *Greaves*, 264 F. Supp. 2d at 1080 (plaintiff brought action two days after the merger announcement, challenging the companies' merger plan).[4]

---

[3] As detailed *supra*, to this day shareholders routinely seek to enjoin merger transactions and tender offers in state court, notwithstanding the enactment of SLUSA back in 1998.  *See, e.g., Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, No. 5402-VCS, 2010 Del. Ch. LEXIS 115, at *2 (Del. Ch. May 13, 2010) (granting plaintiff's request for preliminary injunction to stop a proposed merger, "conclud[ing] that the merger should be enjoined until corrective disclosures are made on three issues in the corporation's proxy statement.") (footnote omitted); *In re Countrywide Corp. S'holders Litig.*, Consol. C.A. No. 3464-VCN, 2009 Del. Ch. LEXIS 155 (Del. Ch. Aug. 24, 2009) (approving settlement of plaintiffs' action which sought to enjoin the merger).

[4] Plaintiff suspects that the reason there are no cases directly on point is that very few defendants in such cases would waste their, and courts', resources by removing a case that will clearly be subject to the "Delaware carve-out," seeking to dismiss a complaint for a few days (or weeks) while knowing the case can, and will, get refiled back in state court a short time later.  Some might claim that such a tactic might rise to the level of "corporate waste."  Especially where, as here, the state law claims underlying the litigation are ripe for adjudication.  *See supra* Section E.

Ironically, just last week in a virtually identical case seeking "to enjoin a self-dealing going-private proposal," filed one day after defendant corporation, Playboy Enterprises, Inc., announced receipt of a going private proposal from its controlling shareholder (Hugh Hefner), defendants, represented by the same firm representing the Committee Defendants herein, filed an answer to the complaint rather than seeking SLUSA removal or a dismissal for failure to state a claim.  *Germershausen v. Hefner, et. al.*, C.A. No. 5632-VCN (Del. Ch.) (the Answer is attached as Exhibit A to the Affidavit of Natalie M. Mackiel, Esq. dated July 21, 2010, submitted herewith: the "Mackiel Aff.")  The complaint in that case specifically alleges common questions
(footnote cont'd on next page)

Defendants' reliance on *Fisher v. Kanas*, 487 F. Supp. 2d 270, 280 (E.D.N.Y. 2007), is unavailing.  (Def. Mem. at 9 n.6.)  The court in *Fisher* never stated nor implied that a completed transaction is required for a case to fall within the "Delaware carve-out."  In fact, the plaintiffs in *Fisher* commenced the action after Capital One had already acquired North Fork Bank, of which Plaintiff was a "former stockholder," *id*. at 272, so this was not even an issue in that case.

"'[O]ut of respect for the independence of state courts, and in order to control the federal docket, federal courts construe the removal statute [28 U.S.C. § 1447] narrowly, resolving any doubts against removability,'" where it is not clear whether the "Delaware carve-out" provision applies.  *See Phillips v. Reckson Assocs. Realty Corp*., No. 06-cv-5971 (JFB)(AKT), 2006 U.S. Dist. LEXIS 83288, at *6, *12-13 (E.D.N.Y. Nov. 15, 2006), *citing Fed. Ins. Co. v. Tyco Int'l Ltd.,* 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006).

Following a removal from state court under section 15 U.S.C. §78bb(f)(2), if the federal court determines that the action is preserved under the "Delaware carve-out," it must remand the action to state court.  15 U.S.C. §78bb(f)(3)(D) ("In an action that has been removed from a state court pursuant to paragraph (2), if the Federal court determines that the action may be maintained in state court pursuant to this subsection, the Federal court shall remand such action to such state court.").  *See also Ind. Elec. Workers Pension Trust Fund*, 2007 U.S. Dist. LEXIS 54203, at *10 ("If a federal court finds that an action under §78bb(f)(2) is preserved by the Delaware carve-out, the court must remand the action to the state court.") (footnote omitted).

---

of fact and law including, "whether the Defendants have adequately disclosed all material information concerning the Going Private Proposal to [defendant's] shareholders…"

## 2.      Plaintiff's Claims Are Not Preempted By SLUSA

Defendants have not, and cannot, establish that Plaintiff's claims meet the requirements for preclusion under SLUSA regardless of the "Delaware carve-out."  If the Court finds that a claim does not meet *all* of the threshold elements for SLUSA preclusion, it must remand that claim to the state court for adjudication on the merits.  *Ring v. AXA Fin., Inc.*, 483 F.3d 95, 98 (2d Cir. 2007), *citing* 15 U.S.C. § 78bb(f)(3)(D); *see also Breakaway Solutions, Inc. v. Morgan Stanley & Co.*, No. 19522, 2004 Del. Ch. LEXIS 125, at *13, n.18 (Del. Ch. Aug. 27, 2004) ("Defendants must meet all five prongs for SLUSA's preemptive effect to result …..")

This Action does not fall within the ambit of SLUSA because the Complaint does not allege that the defendants misrepresented or failed to disclose a material fact "in connection with the purchase or sale of [a covered] security."  15 U.S.C. § 78bb(f)(2).  A plain reading of the Complaint shows that it seeks redress and injunctive relief exclusively for breaches of fiduciary duty.  In fact, references to Defendants' fiduciary duties and/or the breach thereof, are expressly made throughout the Complaint, as well as in the "WHEREFORE" clause after the final paragraph until the "Dated" line.  In contrast, Defendants point to two out of forty-one paragraphs that even arguably mention any failure to disclose information. (¶¶ 33, 36.)

In paragraph 33 of the Complaint, Plaintiff has alleged "The Individual Defendants, who constitute ROAC's Board are familiar with the Company's future prospects but have not disclosed the Company's true potential in order to place an artificial cap on the Buyout Price." In paragraph 36, the Complaint states:

> The Individual Defendants, in failing to disclose the material non-public information in their possession as to the value of ROAC, the full extent of the future earnings potential of ROAC, and its expected increase in profitability, *have breached and are breaching their fiduciary duties to the members of the Class*.  (*Id*., emphasis added.)

As these cites make clear, these paragraphs are not asserting federal securities claims, but rather claims for a breach of the fiduciary duty of candor.  (Complaint at pp. 5, 13.)  Indeed, the omitted information mentioned in paragraphs 33 or 36 of the Complaint is not addressed to any specific statement by any of the Defendants, clearly taking these claims out of the realm of the federal securities laws.  *See, e.g.,* SEC Rule 10b-5, 17 C.F.R 240.10b-5 ("It shall be unlawful for any person, directly or indirectly … (b) To make any untrue statement of a material fact or to *omit* to state a material fact necessary *in order to make the statements made*, in the light of the circumstances under which they were made, not misleading …in connection with the purchase or sale of any security.") (emphasis added);  *see also Lazar v. Gregerson*, No. C 02-0652 SI, 2002 U.S. Dist. LEXIS 6152, at *10 (N.D. Cal. Apr. 5, 2002) (Granting plaintiff's remand motion stating, "[e]ven though the complaint alleges false statements and omissions by defendants in connection with the acquisition, plaintiff is not seeking to 'enforce any liability or duty' arising under federal securities law.")  *citing Klein v. Southwest Gas Corp*., No. 99-1004-IEG (CGA), 1999 U.S. Dist. LEXIS 22979, at *15-16 (S.D. Cal. Aug. 3, 1999).  *See also Derdiger v. Tallman*, 75 F. Supp. 2d 322, 324 (D. Del. 1999) (holding that claims involving misrepresentations to stockholders during a merger fall within the "savings clause" of SLUSA § 78bb(f)(3)(A)(ii) and must be remanded to state court pursuant to section 78(f)(3)(D)).[5]

---

[5]  Defendants' cite to *Phillips v. Harrah's Entertainment, Inc*., and claim that "[a] purported shareholder class action law suit brought, as here, in connection with a proposed transaction is removable under SLUSA."  (Def. Mem. at 9.)  *Phillips* is easily distinguishable because in that case, the court only addressed Plaintiff's argument that its complaint was "not a 'covered action' because it [sought] only equitable relief, not damages," and should not have been counted as part of the consolidated action removed to the court.  2:06-cv-01356-PMP-LRL, 2007 WL 556954, at *3 (D. Nev. Feb. 15, 2007).  The court noted that plaintiff's complaint alleged breach of duty claims "related to the same offer to buy Harrah's Entertainment, Inc. stock as the Complaints consolidated in *In re Harrah's Shareholder Litigation*" (a federal securities case), and addressed only damages and the number of plaintiffs without even acknowledging, let alone analyzing, the

(footnote cont'd on next page)

D.     **Even If This Court Finds SLUSA Preemption, Plaintiff Should Be Allowed to Replead His Claims**

"'SLUSA does not prohibit amendment to the Complaint after removal,' and district courts have given leave to amend to allow a plaintiff to avoid inadvertently pleading a federal claim." *Simon v. Stang*, No. C 10-00262 JF (HLR), 2010 U.S. Dist. LEXIS 46531, at *24 (N.D. Cal. Apr. 8, 2010) *quoting U.S. Mortg. Inc. v. Saxton*, 494 F. 3d 833, 843 (9th Cir. 2007). While Plaintiff believes it is unnecessary, to the extent the Court believes paragraphs 33 and 36 bring the Action within the purview of SLUSA, Plaintiff would ask for leave to replead the relevant portions of those two paragraphs to take this case out of the reach of SLUSA. *See Simon, supra*, at *24-25 (granting leave to amend where "Plaintiffs may have pled a federal claim inadvertently.")

---

other requirements for SLUSA preemption, or addressing the "Delaware carve-out", which, ostensibly, plaintiff did not argue.

Defendants' reliance on *Fisher*, 487 F. Supp. 2d at 280, is similarly misplaced. In *Fisher*, the plaintiff "allege[d] that North Fork disseminated misleading proxy statements, misrepresenting executive compensation policies to stockholders." *Id*. at 272. The plaintiff "contend[ed] that the executive compensation pay-out received by the Defendants was a violation of their fiduciary duties in violation of Delaware state law." *Id*. at 280. The court in that case found that plaintiff had alleged a fraud-based claim stemming from misleading statements in SEC filings. *Id.* at 280. *Fisher* is easily distinguishable from the present case in which Plaintiff alleges only state claims for breach of fiduciary duties in conjunction with the Proposed Transaction, and not fraud-based claims based on misleading statements in SEC filings. Further, as the court explained in *Ind. Elect. Workers Pension Trust Fund*, 2007 U.S. Dist. LEXIS 54203, at *21:

> The *Fisher* decision is unpersuasive support for the defendants in this case. First, the plaintiff in *Fisher* did not address the Delaware carve-out until her reply brief and the court thus found the argument waived. *Id*. at 278. The court's findings with respect to the carve-out are thus arguably dicta and apparently did not have the benefit of vigorous briefing.

E.     **Plaintiff Has Standing And His Claims Are Ripe**

1.     **Actual Harm Does Not Have Had to Have Occurred for Plaintiff to Have Standing to Bring this Action**

Plaintiff's claims are ripe under state law and he has standing to pursue this litigation. Defendants' contention that Plaintiff does not have standing to bring this lawsuit because no harm has yet befallen him or the other ROAC public shareholders would, if accepted by the Court, stand the current state of the law on its head by precluding any actions brought primarily for injunctive relief, such as this case. In the Complaint, Plaintiff has expressly requested injunctive relief, including an order from the Court requiring "defendants to carry out their fiduciary duties to Plaintiff and the other members of the Class, including those duties of care, loyalty, candor and fair dealing" and "granting preliminary and permanent injunctive relief against the consummation of the Proposed Transaction as described herein." ¶¶ 41(b) and (d). By this Action, Plaintiff seeks to ensure a fair price and process. If the Proposed Transaction is consummated (*i.e.* the time Defendants suggest harm would first arise), the harm would be "irreparable." *See, e.g., Police & Fire Ret. Sys. v. Bernal*, No. 4663-CC, 2009 Del. Ch. LEXIS 111, at *6 (Del. Ch. Jun. 26, 2009) ("it would be impossible to 'unscramble the eggs' by attempting to unwind the merger once it has been completed"). The purpose of an injunction in a merger/tender offer context is to stop a transaction *before* it irreparably harms others. *See In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 360-61 (Del. Ch. 2008) ("[A] breach of the disclosure duty leads to *irreparable harm*. On account of this, the Court grants injunctive relief to prevent a vote from taking place where there is a credible threat that shareholders will be asked to vote without such complete and accurate information.") (footnotes omitted; emphasis in original); *Upper Deck. Co. v. Topps Co. (In re Topps Co. S'holders Litig.)*, 926 A.2d 58, 92 (Del. Ch. 2007) ("Given that the Topps board has decided to sell the company, and is not using the

Standstill Agreement for any apparent legitimate purpose, its refusal to release [competing bidder] Upper Deck justifies an injunction. Otherwise, the Topps stockholders may be foreclosed from ever considering Upper Deck's offer, a result that, under our precedent, threatens irreparable injury.") (citation omitted); *In re Pure Resources, Inc. S'holders Litig*., 808 A.2d 421, 452 (Del. Ch. 2002) ("This court has recognized that irreparable injury is threatened when a stockholder might make a tender or voting decision on the basis of materially misleading or inadequate information.")(citations omitted).[6]

### 2. Plaintiff and the Other ROAC Shareholders Have Already Been Harmed from Defendants' Actions

Assuming *arguendo* that Plaintiff must have already been harmed before he would have standing to commence this Action, the factual allegations of the Complaint demonstrate such harm from Defendants' actions has already occurred.  The Complaint alleges that the Swenson Group collectively controls 70% of the voting power of ROAC and has engaged in an "unlawful scheme and plan to acquire the Company for grossly inadequate consideration and in breach of the individual defendants' fiduciary duties." ¶ 1.  The Complaint further alleges that the Proposed Transaction is "…the product of unfair dealing, and the Buyout Price offered to Class members is unconscionable and unfair and so grossly inadequate as to constitute a gross breach of trust committed by the management defendants participating in the Proposed Transaction against the public stockholders…."  ¶ 32.  Despite Defendants insistence to the contrary, ROAC's public shareholders have already been injured as a result of Defendants' actions and

---

[6] To the extent Defendants contend that the Proposed Transaction is not inevitable, as detailed in the next section, Plaintiff's claim is still ripe because Defendants are currently breaching their fiduciary duties and the Swenson Group's plan and scheme has already commenced and harmed Plaintiff and the Class as facilitated by the remaining defendants (including the so-called independent directors).  However, as this Court does not have subject matter jurisdiction, Defendants should make this argument to the State Court.

none of the members of the ROAC Board can be relied upon to fairly negotiate with the Swenson Group on behalf of ROAC's public shareholders going forward.

The ROAC Board consists of seven members -- Kurt M. Swenson, Richard C. Kimball, Donald Labonte, Charles M. Waite, James L. Fox, Frederick E. Webster Jr., and Pamela G. Sheiffer.  Defendants Kurt M. Swenson, Kimball, Labonte, and Waite are conflicted as they are affiliated with the Swenson Group. (¶¶ 2, 9, 10, 12, 15, 29-31.)  The remaining three Board members – Defendants James L. Fox, Pamela G. Sheiffer, and Frederick E. Webster Jr. (*i.e.* the Committee Defendants) -- serve on the Board at the will of the Swensons. As set forth in ROAC's own SEC filings "Kurt M. Swenson and his brother, Kevin Swenson, collectively have 66% [now approximately 70%] of the total voting power of all outstanding shares of our common stock and will therefore be in a position to control the outcome of most corporate actions requiring stockholder approval *including the election of directors* and the approval of transactions involving a change in control of the Company."  *See, e.g.*, Mackiel Aff., Ex. B at p. 12 (emphasis added).[7]  Therefore, the Committee Defendants cannot be considered truly independent.

The Swenson Group's plan and scheme to take the Company from the public shareholders on the cheap (¶ 1), has already commenced with the full compliance of all of the Individual Defendants (including the so-called "independent" directors).  In particular, the Board blindly approved the Company's December 2009 reincorporation from the State of Delaware to the State of Vermont.  (¶ 22.)  It is now clear that ROAC's reincorporation was an attempt to take away from ROAC's public shareholders strict protections afforded them under Delaware

---

[7] Exhibit B to the Mackiel Aff. is ROAC's Form 10-K for the period March 31, 2010 filed with the SEC.

law in "freeze-out" transactions by controlling shareholders.  For instance, under Delaware law, with certain exceptions, a controlling shareholder cannot squeeze-out minority shareholders without paying fair value for their shares and the controlling shareholder bears the burden of proof that the offer process and price is fair.  *See, e.g.*, *Kahn v. Lynch Commc'n Sys.*, 638 A.2d 1110, 1117 (Del. 1994) ("It is a now well-established principle of Delaware corporate law that in an interested merger, the controlling or dominating shareholder proponent of the transaction bears the burden of proving its entire fairness.") (citation omitted).  The burden of proof shifts if the transaction is approved by a majority of the minority (i.e. non-controlling) shareholders.  *See Bershad v. Curtiss-Wright Corp.*, 535 A.2d 840, 846 (Del. 1987).  Pursuant to Delaware law, abstained shareholder votes count as a "no" vote, whereas in Vermont, a vote is passed based on a majority of votes actually cast, therefore making it far easier for the Swenson Group to obtain a simple majority of the minority vote.  *See* Exhibit C to the Mackiel Aff. (attaching proxy submitted to ROAC's shareholders in conjunction with the reincorporation vote).  For example, assume for purposes of illustration, that there were, in total, 100 ROAC shareholders who were unaffiliated with the Swenson Group who all had the same amount of ROAC shares.  If only 3 of these 100 shareholders voted concerning the merger with two voting for it, and one against, under Vermont law, the merger would be approved 66 2/3% to 33 1/3%, but under Delaware law, the merger would be voted down 98% to 2%!  Defendants' plan and scheme has begun and shareholders have already been harmed by having their voting rights diminished.

Furthermore, the allegations in the Complaint show that the Swenson Group, and affiliated defendants, have breached their fiduciary duties as controlling shareholders by offering a price that was blatantly unfair.  In this regard, the Complaint cites evidence that suggests the price of $4.38 per share was unfair based on, *inter alia*, the expected future earnings growth of

the Company.  (¶ 32.)  Indeed, one of ROAC's largest shareholders, North Star Investment

Management Corporation, an investment company, filed a form SC 13D with the SEC attaching

a letter addressed to the ROAC Board chastising the Proposed Transaction because "the true

value of the company is substantially higher" than the $4.38 offer from the Swanson Group.  *See*

Mackiel Aff., Exhibit D.  Many other ROAC shareholders have similarly complained on Yahoo!

Finance Message Boards.  *See* http://messages.finance.yahoo.com/mb/ROAC.  However,

Defendants are sure to argue that Vermont courts should not follow Delaware law, since ROAC

is now a newly incorporated Vermont company.  Because Vermont law is far less developed in

this area than is Delaware law, the reincorporation creates potential uncertainties that Defendants

may use to the Swenson Group's benefit and, conversely, to the detriment of ROAC's public

shareholders.  To accomplish the proposed change in ROAC's state of incorporation from

Delaware to Vermont, the Board of Directors (including the "independent" directors)

unanimously adopted an Agreement and Plan of Merger between the Company and its newly

formed, wholly-owned subsidiary, Rock of Ages Corporation (Vermont).  ROAC Form

DEF14A, September 17, 2009.

     In addition, Defendants' actions to date have effectively capped the trading price of

ROAC's shares. (¶ 33.)  Prior to the announcement of the Proposed Transaction, ROAC shares

had been gradually increasing in value as the market improved.  For example, ROAC's shares

rose from a close of $3.04 per share on April 1, 2010, up to a close of $3.50 per share on May 4,

2010.  ROAC's shares dipped back down to a close of $3.38 on May 7, 2010 as the stock market

in general had a few bad days.  *See* Mackiel Aff., Exhibit E (attaching Yahoo Finance stock

prices for ROAC stock and the DOW).  On May 7, 2010, just as the stock market was about to

close, ROAC announced the Proposed Transaction to place an artificial lid on the price of

ROAC's shares.  *Id.*  Given Swenson Group's voting control over the Company, ROAC shareholders have no hope that another bidder might emerge with a superior proposal (¶ 37), and Swenson will be able to force through the Proposed Transaction at an unfair price, unless, at least, Defendants agree to allow a majority of the minority vote to occur (although even the effectiveness to the public shareholders of such as vote has been diminished by the Defendants' reincorporation of ROAC in Vermont shortly before the announcement of the Proposed Transaction).  Accordingly, shareholders have already been harmed by the Swenson Group's actions (and those of its related defendants) because ROAC's share price has been improperly capped by the Proposed Transaction.  *See American Gen. Corp. v. Texas Air Corp*., Nos. 8390, 8406, 8650, 8805, 1987 Del. Ch. LEXIS 382 (Del. Ch. Feb. 5, 1987) (finding plaintiffs' adequately alleged a breach of fiduciary duty in a buyout situation where there was some evidence that the market price for the company's stock was intentionally capped).

Given the unique facts of this case, described *infra*, including ROAC's reincorporation from Delaware to Vermont just a short time prior to the announcement of the Proposed Transaction in connection with the plan and scheme of the Swenson Group to acquire the Company on the cheap, there are sufficient facts plead in the Complaint to suggest that the members of the ROAC Board cannot be trusted to act in the best interests of ROAC's public shareholders concerning the Proposed Transaction.[8]  Accordingly, Plaintiff's lawsuit is ripe and he has standing.[9]

---

[8] The cases cited by Defendants are inapposite.  None of the cases deal with a merger or tender offer situation, let alone a proposed transaction by a controlling shareholder that caused the company to reincorporate in another jurisdiction in an attempt to squeeze-out minority shareholders at an unfair price.

[9] To the extent that the Court determines it has subject matter jurisdiction and dismisses any of Plaintiff's allegations for failure to plead with specificity, Plaintiff requests leave to amend his

(footnote cont'd on next page)

IV.     **CONCLUSION**

Defendants have not met their burden of demonstrating that Plaintiff's Complaint fails to state a claim upon which relief can be granted and that Plaintiff's claims are subject to preclusion under SLUSA.  To the extent Defendants seek an adjudication as to whether the Action is premature, the forum must be the State of Vermont Washington County Superior Court where the Action was commenced.  This Court, pursuant to the "Delaware carve-out" lacks subject matter jurisdiction to decide that issue.

Dated: July 21, 2010

Respectfully submitted,

/s/ Daniel P. Richardson, Esq.

Daniel P. Richardson
Gerald Tarrant
TARRANT, GILLIES, MERRIMAN &
RICHARDSON
44 East State Street
P.O. Box 1440
Montpelier, Vermont 05601-1440
(T): (802) 223-1112
(F): (802) 223-6225

*Attorneys for Plaintiff*

OF COUNSEL:

WOLF POPPER LLP
845 Third Avenue
New York, New York 10022
(T):  (212) 759-4600

---

complaint.  *See* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").