**UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT**

| | |
|---|---|
| TODD SEMON, on behalf of himself, and all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>ROCK OF AGES CORPORATION, SWENSON GRANITE COMPANY, LLC, KURT M. SWENSON, JAMES L. FOX, RICHARD C. KIMBALL, DONALD LABONTE, LAURA A. PLUDE, PAMELA G. SHEIFFER, CHARLES M. WAITE, and FREDERICK E. WEBSTER JR.,<br><br>  Defendants. | Case No. 5:10cv00143 - CR |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF HIS MOTION TO REMAND TO STATE COURT**

**PRELIMINARY STATEMENT**

Plaintiff[1] respectfully submits this memorandum in further support of his Motion to

Remand this Action to the State of Vermont Washington County Superior Court for adjudication.

Plaintiff's motion should be granted because the Securities Litigation Uniform Standards Act, 15

---

[1] Capitalized terms herein are defined in Plaintiff's Memorandum of Law in Support of Motion to Remand (the "Remand Motion") (Dkt. No. 16), and Plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("Pltf. Opp.") (Dkt. No. 36). For the sake of brevity, Plaintiff refers to, and incorporates herein, the Preliminary Statements and the Statements of Facts in those submissions.

U.S.C. §78 ("SLUSA") requires this Court to remand Plaintiff's claims to the Washington County Superior Court.[2]

The Complaint asserts breach of fiduciary duty claims exclusively under Vermont state law based on defendants' wrongful conduct related to the announcement by ROAC that Swenson Granite Company, LLC and certain affiliated persons, who together control ROAC, had made a proposal to purchase all of the outstanding shares of the Company for $4.38 per share in cash.  In connection with this proposed transaction, defendants have breached, and will continue to breach, their fiduciary duties to the ROAC shareholders unless enjoined from doing so.  This Action seeks to remedy this wrongdoing on behalf of ROAC's public shareholders (the "Class").

The Action must be remanded, as this Court lacks subject matter jurisdiction over plaintiff's exclusively state law claims.  Defendants do not, and cannot, establish that Plaintiff's claims meet the requirements for removal under SLUSA and, in any event, Plaintiff's claims are expressly "carved-out" of and "preserved" to state court by SLUSA.  Defendants' contention that SLUSA's express "Delaware carve-out" does not *yet* apply because no merger transaction has occurred is devoid of both legal and logical support.  Courts frequently apply the Delaware carve-out to remand breach of fiduciary duty cases challenging mergers *before* they are consummated.

I.    ARGUMENT

A.    **Plaintiff's Claims are Maintainable Under the "Delaware Carve-Out"**

As already established in the Remand Motion, and Pltf. Opp., Plaintiff's claims are exempted from removal by SLUSA's "Delaware carve-out" provision.  In fact, contrary to Defendants' assertions, this Action is precisely the type of case which Congress expressly provided would **not** be removable/precluded by SLUSA, 15 U.S.C. §77p, 15 U.S.C. §78bb(f).

---

[2] Defendants have conceded, as they must, that Plaintiff's claims are not subject to the Class Action Fairness Act ("CAFA").  *See* Defendants' Opposition to Motion to Remand ("Deft. Opp.") p. 14, n.8.  Thus, CAFA does not provide any basis for removal either.

Under 15 U.S.C. §78bb(f)(3), Congress expressly reserved to state courts class actions, such as the present action.  Under section 78bb(f)(3), a "covered class action" based on the statutory or common law of the State in which the issuer is incorporated *may be maintained* if it involves:

> (I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
> (II) any recommendation, position, or other communication with respect to the sale of securities of an issuer that—
> > (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
> > (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

Accordingly, Congress explicitly preserved class actions based on the statutory or common law of the State in which the issuer is incorporated or organized.  As pled in the Complaint, ROAC is a Vermont corporation and the breach of fiduciary duty claims in the Complaint are based exclusively upon Vermont law.  In *Alessi v. Beracha*, 244 F. Supp. 2d 354, 359 (D. Del. 2003), the court observed that "[t]he legislative history from the Senate Banking Committee discussing the Delaware carve-out exceptions, while brief, is instructive:

> The Committee is keenly aware of the importance of state corporate law, specifically those states that have laws that establish a fiduciary duty of disclosure. **It is not the intent of the Committee in adopting this legislation to interfere with state law regarding the duties and performance of an issuer's directors or officers** in connection with a purchase or sale of securities by the issuer or an affiliate from current shareholders or communicating with existing shareholders with respect to voting their shares, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

> S. Rep. 105-185, at 6 (May 4, 1998) (emphasis added).

The gravamen of plaintiff's complaint in *Alessi*, as in this case, was the breach of defendants' fiduciary duty under state law and "[t]herefore, the court conclude[d] that this is exactly the type of action Congress intended to exempt from the preemption provisions of SLUSA."  *Id*. at 359.  Furthermore, the *Alessi* Court warned that "adopting [a] narrow interpretation of the statutory language would permit corporations and directors to evade liability

by structuring their transactions to fall outside the traditional definition of a tender or exchange offer.  Permitting such a manipulation would frustrate the purpose of §77bb(f)(3)(A)(2) and render the second Delaware carve-out exception virtually meaningless." *Id*. at 359.  Just as in *Weitman v. Tutor*, 588 F. Supp. 2d 133, 139 (D. Mass. 2008), "[c]ontrary to the defendants' arguments, the gravamen of [Plaintiff's] claims is not insider trading or self-dealing sounding in federal law but, rather, [Plaintiff's] dissatisfaction with certain conduct of corporate officers prior to [a] merger." As such, as in *Weitman*,  "this case must be remanded because it is subject to the Delaware carve-out." *Id., citing* § 78bb(f)(3)(A)(ii)(II).

Despite Defendants' contentions regarding the requirements for SLUSA preemption, this is exactly the kind of action Congress envisioned when it determined that it was appropriate to preserve such actions to state court.  The Action falls within both definitional subsections of the "Delaware carve-out" in §78bb(f)(3)(A)(ii) of actions that are preserved (even though only one is required).

### 1.      Plaintiff's Claims Are Maintainable Under the First "Delaware Carve-Out," which Does Not Require a Completed Transaction

Plaintiff meets the first prong of the carve-out because his claims involve "the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer."  Plaintiffs' claims arise out of the Proposed Transaction in which the Swenson Group has proposed to purchase all of the securities of ROAC from the current holders of ROAC common stock.  Swenson Group is clearly an affiliate of the issuer, as the Group controls ROAC through the ownership of ROAC shares held by Kurt Swenson, Kevin Swenson and Robert Pope.  These three men own "approximately 29% of all outstanding shares of common stock of Rock of Ages, and control approximately 70% of the voting power of all outstanding capital stock of Rock of Ages."  (¶¶ 9, 26.)  Kurt Swenson is the Chairman of Swenson Granite and non-executive Chairman of the Board of ROAC (as well as the former CEO, and President of

ROAC), Kevin Swenson is the brother of Kurt Swenson, and Robert Pope is the President and Chief Executive Officer of Swenson Granite.  (¶¶ 2, 9.)

Defendants' contention that the first carve-out does not apply because "there has been no purchase or sale of securities," is illogical and erroneous.  No provision of SLUSA requires a consummated transaction.  This is only logical, since any such requirement would prevent shareholders from seeking to enjoin such transactions in state law cases.[3]  As Defendants' acknowledge, the SLUSA provision requires only that the claims "involve" the "purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holder of equity securities of the issuer."  15 U.S.C. §78(f)(3)(A)(ii)(I).  Plaintiff's claims meet this requirement, since his claims involve the proposal by a controlling shareholder to purchase all outstanding shares of the Company.  Numerous federal courts have applied the "Delaware carve-out" to remand transaction-related cases back to state courts prior to the consummation of these transactions.  *See, e.g., Weitman*, 588 F. Supp. 2d  133 (shareholder sued to enjoin a merger); *Rubery*, 2007 U.S. Dist. LEXIS 39372 (plaintiff based her allegations exclusively on a proposed merger); *Greaves*, 264 F. Supp. 2d at 1080 (plaintiff brought action two days after the merger announcement, challenging the companies' merger plan).

Defendants' reliance on *Atkinson v. Morgan Asset. Mgmt., Inc*., 664 F. Supp. 2d 898, 904-05 (W.D. Tenn. 2009), is unavailing.  The case is not, as they claim, "precisely on point," but instead is easily distinguishable because the claims there did not involve any aspect of a controlling shareholder buyout or, indeed, any buyout at all.  The claims there involved federal securities fraud claims regarding the management of funds in non-compliance with published investment objectives.  *Id.* at 901-902.  Moreover, some of the same plaintiffs brought cases

---

[3] As demonstrated in Pltf. Opp. at p. 11, n.3, shareholders routinely seek to enjoin mergers and tender offers in state court, notwithstanding the enactment of SLUSA.

simultaneously in state and federal court.  *Id.* at 900 ("Plaintiffs also allege violations of federal

law, but they have limited their causes of action those solely under state law" in order to

"complement [a related federal securities class action] *brought by some of the same named*

*plaintiffs in this case* … seek[ing] recovery under federal securities law.") (emphasis added.)

Plaintiff suspects that the reason there are no cases directly on point is that most defendants

in such cases would be reluctant to waste their, and courts', resources by removing a case that will

clearly be subject to the "Delaware carve-out," seeking to dismiss a complaint for a short amount

of time knowing the case can, and will, get refiled in state court.  Such a tactic is especially

troublesome, where, as here, the state law claims underlying the litigation are ripe for adjudication.

*See* Pltf. Opp. pp. 18-21.  Not surprisingly, although they criticize Plaintiff for the same,

Defendants fail to cite any case that clearly supports their arguments for removal/dismissal.

Defendants have not cited a single case in which a court kept a removed action and dismissed

claims exactly like those Plaintiff asserts here related to a proposed transaction advanced by a

controlling shareholder.

### 2.   Plaintiff's Claims Are Maintainable Under the Second Prong of the "Delaware Carve-Out" as they Involve a Communication Regarding Shareholder Voting

Plaintiff's claims also fall under the second prong of the "Delaware carve-out."   "A

covered class action that is based upon the law of the state in which the issuer is incorporated may

be maintained under prong (II) if it meets three requirements: it must 'involve' (1) 'any

recommendation, position, or other communication with respect to the sale of securities' of the

issuer that (2) 'is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity

securities of the issuer' and that (3) 'concerns decisions of such equity holders with respect to

voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or

appraisal rights.'"  *Ind. Elec. Workers Pension Trust Fund v. Millard*, No. 07 Civ. 172 (JGK),

2007 U.S. Dist. LEXIS 54203, at *11-12 (S.D.N.Y. Jul. 24, 2007), *citing Superior Partners v. Chang*, 471 F. Supp. 2d 750, 753 (S.D. Tex. 2007) (claims for breach of fiduciary duty based on preliminary proxy for acquisition by merger were remanded to state court under "Delaware carve-out"). *See also Nickell v. Shanahan*, No. 4:09-cv-931 SNLJ, 2010 U.S. Dist. LEXIS 2481 (E.D. Mo. Jan 13, 2010) ("Delaware carve-out" applied to shareholder class action alleging, *inter alia*, breach of fiduciary duty and aiding and abetting such breach, on behalf of former shareholders in connection with the acquisition of their shares; and removal under SLUSA was improper and court on its own motion remanded case to state court); *Weitman v. Tutor*, 588 F. Supp. 2d 133, 137, 139 (D. Mass. 2008) (action for breach of fiduciary duty by majority shareholder in acquiring shares of minority shareholders is subject to "Delaware carve-out" and must be remanded to state court); *Rubery v. Radian Group, Inc.*, No. 07-cv-1068, 2007 U.S. Dist. LEXIS 39372, at *1-2, 12-16 (E.D. Pa. May 30, 2007) (class action for breach of fiduciary duty for agreeing to merger without soliciting other bids is not removable under SLUSA and is remanded to state court; press release announcing a merger is a "communication" within meaning of "Delaware carve-out").

Plaintiff satisfies each requirement of Prong II. Plaintiff alleged wrongdoing that is based on a communication (the May 7, 2010 press release) by an issuer (ROAC) to holders of equity securities of the issuer (ROAC's public shareholders) which concerns decisions of the equity security holders with respect to an eventual vote of their securities (*i.e.* whether to approve the Proposed Transaction).[4]   Thus, Plaintiff's claim falls within the "Delaware carve-out."   *See*

---

[4] The fact that the May 7 press release was "a communication with respect to the sale of securities of the issuer" "concern[ing] decisions of such equity holders" is buttressed by the fact that shortly after it was issued, North Star Investment Management Corporation, a substantial investor owning 15.4% of ROAC's outstanding shares, filed a form 13D with the SEC attaching a letter to the Board responding to the press release about the Proposed Transaction and complaining about it precisely because it concerned decisions of ROAC equity holders with respect to voting their securities, acting in response to an exchange offer, and exercising dissenters' or appraisal rights.

*Greaves v. McAuley*, 264 F. Supp. 2d 1078, 1083 (N.D. Ga. 2003) (press release that was intended to encourage shareholders to approve a proposed merger met the carve-out requirements).

Defendants' reliance on *Proctor v. Vishay*, No. C 06-04134 JF, 2007 WL 518616 (N.D. Cal. Feb. 13, 2007) is inapposite. As Defendants acknowledge, in *Proctor*, plaintiffs complained that the company's auditor "repeatedly had made false and misleading financial reports and statements regarding [the company]." at *2. These allegations are in stark contrast to the present facts where Plaintiff points to one communication directly related to the Proposed Transaction. Notably, Defendants ignore the recognition in *Proctor* that "[a]s a result of the tender offer, several civil actions were filed in the Delaware Chancery Court … and [p]laintiffs in the Delaware case settled with Vishay [] after Vishay agreed to increase its tender offer from 2.64 to 3.075 shares of Vishay common stock for each share of Siliconix common stock."[5]

**B.      Defendants Have Failed to Show that the SLUSA Requirements Are Satisfied**

Contrary to Defendants' arguments, Plaintiff does not concede that the threshold SLUSA requirements are satisfied. Instead, Plaintiff insists that Defendants have not, and cannot, establish that Plaintiff's claims meet the requirements for removal under SLUSA, and thus the Court must remand them to the state court for adjudication on the merits. *Ring v. AXA Fin., Inc.*, 483 F.3d 95, 98 (2d Cir. 2007), *citing* 15 U.S.C. §78bb(f)(3)(D); *see also Breakaway Solutions, Inc. v. Morgan Stanley & Co.*, No. 19522, 2004 Del. Ch. LEXIS 125, at *13, n.18 (Del. Ch. Aug. 27, 2004) ("Defendants must meet all five prongs for SLUSA's preemptive effect to result …")

---

[5]      Defendants' reliance on *Fisher v. Kanas*, 487 F. Supp. 2d 270, 280 (E.D.N.Y. 2007) is misplaced. *Fisher* is easily distinguishable from the present case because Fisher involved fraud-based claims based on misleading statements in SEC filings, unlike Plaintiff here who alleges only state claims for breach of fiduciary duties in conjunction with the Proposed Transaction. Further, "[t]he court's findings [in *Fisher*] with respect to the carve-out are [] arguably dicta and apparently did not have the benefit of vigorous briefing." *Ind. Elect. Workers Pension Trust Fund*, 2007 U.S. Dist. LEXIS 54203, at *21.

Here, as discussed in Pltf. Opp. (pp.13-14) Plaintiff's claims do not fall within the ambit of SLUSA because the Complaint does not allege that the defendants misrepresented or failed to disclose a material fact "in connection with the purchase or sale of [a covered] security."   15 U.S.C. §78bb(f)(2).   A plain reading of the Complaint shows that it seeks redress and injunctive relief exclusively for breaches of fiduciary duty.   Defendants point to only two out of forty-one paragraphs that even arguably mention any failure to disclose information. (¶¶ 33, 36.)

Plaintiff has clearly not asserted federal securities claims, but rather claims for a breach of the fiduciary duty of candor.  (Complaint at pp. 5, 13.)  Indeed, the omitted information mentioned in paragraphs 33 or 36 of the Complaint is not addressed to any specific statement by any of the Defendants, clearly taking these claims out of the realm of the federal securities laws.  *See, e.g.,* SEC Rule 10b-5, 17 C.F.R 240.10b-5 ("It shall be unlawful for any person, directly or indirectly … (b) To make any untrue statement of a material fact or to *omit* to state a material fact necessary *in order to make the statements made*, in the light of the circumstances under which they were made, not misleading …in connection with the purchase or sale of any security.") (emphasis added); *see also* Pltf. Opp. p. 14.[6]

## C.   If This Court Finds Removal Was Proper, Plaintiff Should Be Allowed to Replead His Claims

"'SLUSA does not prohibit amendment to the Complaint after removal,' and district courts have given leave to amend to allow a plaintiff to avoid inadvertently pleading a federal claim." *Simon v. Stang*, No. C 10-00262 JF (HLR), 2010 U.S. Dist. LEXIS 46531, at *24 (N.D. Cal. Apr.

---

[6]  Defendants' reliance on *Zoren v. Genesis,* 195 F. Supp. 2d 598, 604 (D. Del. 2002) is also inapt. There, plaintiff's claims sounded in federal securities fraud.  Plaintiff "repeatedly allege[d] fraud, misrepresentation and the like in the public offerings. Indeed, he clearly state[d] that 'the IPO prospectus was materially false and misleading in numerous ways,' including a dozen material facts defendants 'failed to disclose' to the public." *Zoren*, at 603.  Further, the court found that the IPO prospectuses did not concern plaintiff's voting rights because plaintiff alleged that defendants "sold units to raise revenue to benefit [a broker dealer]."

8, 2010) *quoting U.S. Mortg. Inc. v. Saxton*, 494 F. 3d 833, 843 (9th Cir. 2007). While Plaintiff believes it is unnecessary, to the extent the Court believes the Action is within the purview of SLUSA, Plaintiff asks for leave to replead the relevant portions the Complaint Defendants put in issue to take this case out of the reach of SLUSA. *Simon*, at \*24-25 (granting leave to amend where "Plaintiffs may have pled a federal claim inadvertently.")

## II.     CONCLUSION

Defendants have not met their burden of demonstrating that removal of this Action was proper. For this, and the other reasons stated herein, this Court lacks subject matter jurisdiction to decide this Action, and must remand to state court for adjudication on the merits.

Dated: July 26, 2010

> Respectfully submitted,
>
> /s/
>
> _____
>
> Daniel P. Richardson
> Gerald Tarrant
> TARRANT, GILLIES, MERRIMAN &
> RICHARDSON
> 44 East State Street
> P.O. Box 1440
> Montpelier, Vermont 05601-1440
> (T): (802) 223-1112
> (F): (802) 223-6225
>
> *Attorneys for Plaintiff*

OF COUNSEL:

WOLF POPPER LLP
Chet B. Waldman (admitted *pro hac vice*)
845 Third Avenue
New York, New York 10022
(212) 759-4600