UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
TODD SEMON, on behalf of himself, and all : 
others similarly situated,
:
                       Plaintiff,        Civil Action
: No. 5:10-cv-00143-CR
    v.
:
ROCK OF AGES CORPORATION,
SWENSON GRANITE COMPANY, LLC, :
KURT M. SWENSON, JAMES L. FOX,
RICHARD C. KIMBALL, DONALD :
LABONTE, LAURA A. PLUDE, PAMELA G.
SHEIFFER, CHARLES M. WAITE, and :
FREDERICK E. WEBSTER, JR.,
:
                       Defendants.
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**THE COMMITTEE DEFENDANTS' REPLY**
**IN FURTHER SUPPORT OF MOTION TO DISMISS**

NOW COME defendants James L. Fox, Pamela G. Sheiffer and Frederick E. Webster, Jr. (the "Committee Defendants"), by and through their attorneys, Dinse, Knapp & McAndrew, P.C., and reply in further support of their motion, pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and the Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb ("SLUSA"), to dismiss Plaintiff's complaint. The Motion to Dismiss (Dkt. 10) should be granted (and Plaintiff's Motion to Remand (Dkt. 16) should be denied) for the following reasons:

- First, each SLUSA requirement has been satisfied, and, as the Complaint clearly shows, Plaintiff's case involves allegations of omissions made "in connection with" the sale of securities, as required under the statute.

- Second, neither prong of the "Delaware carve-out" saves Plaintiff's claims, because that SLUSA exception does not apply to an action, such as this, concerning a proposed transaction that has not occurred, has neither been agreed-to nor approved by ROAC's Board, and as to which shareholder approval has not been sought.

- Third, Plaintiff's purported harm resulting from a proposed transaction is entirely speculative. Accordingly, Plaintiff lacks standing and his claims are not ripe.

- Fourth, Plaintiff's request for leave to amend should be rejected because any amendment would be futile.

## ARGUMENT

### I. PLAINTIFF'S NEW ASSERTION THAT SLUSA'S "IN CONNECTION WITH" PRONG HAS NOT BEEN SATISFIED CONTRADICTS HIS CLAIMS -- AND FAILS REGARDLESS

Consistent with his allegations, Plaintiff did not deny in his Motion to Remand that each SLUSA element is satisfied here. Only now does Plaintiff make the last-ditch argument (Plaintiff's Opposition ("Opp.") 13-14 (Dkt. 36)) that the Complaint does not allege any misrepresentation or omission "in connection with" the purchase or sale of a security, as required for SLUSA to apply. See 15 U.S.C. § 78bb(f)(1). This new assertion contradicts a central thesis of Plaintiff's entire case -- that he "alleged wrongdoing that is based on a communication (the May 7, 2010 press release) . . . which ultimately concerns decisions of the equity security holders with respect to an eventual vote of their securities" (Opp. 9) -- and it makes no sense.

As Plaintiff points out, the Complaint alleges material omissions:

> The Individual Defendants, who constitute ROAC's Board, are familiar with the Company's future prospects but have not disclosed the Company's true future potential in order to place an artificial cap on the Buyout Price.

> The Individual Defendants, in failing to disclose the material non-public information in their possession as to the value of ROAC, the full extent of the future earnings potential of ROAC and its expected increase in profitability, have breached and are breaching their fiduciary duties to the members of the Class.

(Compl. ¶¶ 33, 36 (emphasis added).) Logically, Plaintiff's case turns on those alleged omissions: assuming ROAC's Special Committee and Board approve the Swenson Granite proposal, shareholders would vote on that proposal (see 11A V.S.A. § 11.03 (under Vermont law, a plan of

merger must be approved by "shareholders entitled to vote")) -- and would only vote in favor if Defendants omitted facts that, if disclosed, would show the deal's supposed "unfairness".

Plaintiff suggests that because only "two out of forty-one" paragraphs of his Complaint allege material omissions, the "in connection with" prong has not been satisfied. However, the application of SLUSA does not hinge on the frequency of allegations of omissions or misrepresentations in a complaint.  If they are present, SLUSA applies.  See 15 U.S.C. § 78bb(f)(1) (no covered class action may be maintained alleging "a misrepresentation or omission of a material fact . . . ." (emphasis added)); Fisher v. Kanas, 487 F. Supp. 2d 270, 280 (E.D.N.Y. 2007), aff'd 288 Fed. Appx. 721 (2d Cir. 2008) (SLUSA "only requires some 'connection' between a misrepresentation and stock" in order for the "in connection with" prong to be satisfied); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85-86 (2006) ("Congress envisioned a broad construction" of SLUSA's "in connection with" prong, because a narrow reading of the provision would "frustrate the objectives" of the PSLRA).

Plaintiff also attempts to cast those allegations "not [as] federal securities claims, but rather claims for a breach of the fiduciary duty of candor," because the alleged omissions are "not addressed to any specific statement by any of the Defendants . . . ."  (Opp. 14 (citing 17 C.F.R. 240.10b-5).)  Yet Plaintiff himself acknowledges that he "points to one communication directly related to the Proposed Transaction" in which omissions were made (i.e., the May 7, 2010 press release).  (Reply to Motion to Remand ("Remand Reply") 8 (Dkt. 40).)  What could be more specific?

Moreover, Plaintiff's assertion that "[a] plain reading of the Complaint shows that it seeks redress and injunctive relief exclusively for breaches of fiduciary duty" (Opp. 13) does not remove this action from SLUSA's ambit:  actions dismissed under SLUSA generally

originate as purported state-law breach of fiduciary duty cases based on failure to disclose. See, e.g., Fisher v. Kanas, 288 Fed. Appx. 721, 723 (2d Cir. 2008) (affirming dismissal under SLUSA of breach of fiduciary duty claims brought under state law based on alleged omissions); Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 107-08 (2d Cir. 2001) (same).[1]

## II. THE DELAWARE CARVE-OUT DOES NOT APPLY TO A TRANSACTION THAT HAS NOT OCCURRED OR BEEN AGREED-TO, AND WHERE SHAREHOLDER APPROVAL HAS NOT BEEN SOUGHT

### A. Plaintiff Still Provides No Support For His Assertion That The First Carve-Out Applies To A *Proposed* Transaction

The first carve-out requires that the suit "involve" "the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer," 15 U.S.C. § 78bb(f)(3)(A)(ii)(I). Thus, where, as here, there has been no "purchase or sale of securities," the first carve-out simply does not apply. See Atkinson v. Morgan Asset Mgmt., Inc., 664 F. Supp. 2d 898, 904-05 (W.D. Tenn. 2009) (dismissing under SLUSA and finding the first carve-out inapplicable, because "Plaintiffs do not complain that, during the stated class period, they purchased or sold shares of the Funds because of misleading information Defendants provided. . . . The plain text of the statute excludes Plaintiffs' claims from the first carve-out"). Plaintiff fails to cite a single case supporting his assertion that the first carve-out applies to a proposed transaction -- i.e., one that involves no actual purchase or sale.

Plaintiff later argues that "[n]o provision of SLUSA requires a consummated transaction" (Opp. 11; see also Remand Reply 5) and supports that contention with citations to Weitman v. Tutor, 588 F. Supp. 2d 133 (D. Mass. 2008), Rubery v. Radian Group, Inc., Civ. No.

---

[1] Lazar v. Gregerson, No. C 02-0652, 2002 WL 535405, at *2 (N.D. Cal. Apr. 8, 2002) and Derdiger v. Tallman, 75 F. Supp. 2d 322, 324 (D. Del. 1999), cited by Plaintiff on this point, do not even discuss the "in connection with" requirement, and are also inapplicable because both concerned mergers that had already occurred (see supra Point II.B).

07-1068, 2007 WL 1575211, at *5 (E.D. Pa. May 31, 2007), and Greaves v. McAuley, 264 F. Supp. 2d 1078, 1080 (N.D. Ga. 2003). But those cases do not discuss the first carve-out (or refute the plain language of the statute or the clear holding in Atkinson) and are inapplicable.[2]

### B. Plaintiff Cannot Support His Assertion That The Second Carve-Out Applies To A Transaction Where No Agreement Has Been Reached Or Shareholder Approval Sought

The second carve-out applies only to suits that "involve" a recommendation that "concerns decisions of [] equity holders with respect to voting their securities . . . ." 15 U.S.C. § 78bb(f)(3)(A)(ii)(II) -- and therefore does not apply here, where there is only a proposed transaction that has not been approved by ROAC's Special Committee or Board or agreed to, and as to which shareholders have not been asked to vote or otherwise take any action. See Proctor v. Vishnay Intertechnology, Inc., No. C 06-04134 JF, 2007 WL 518616, at *7 (N.D. Cal. Feb. 13, 2007) ("[T]he Delaware carve-out relates only to communications that are directly related to the exercise of shareholders' voting rights.").[3] Plaintiff ignores this point (Opp. 8-9), citing the same five cases he cited in his Motion to Remand (at 7-8) -- which the Committee Defendants already

---

[2] Plaintiff argues in his Remand Reply (at 5-6) that Atkinson is "unavailing" because that case did not involve a buyout, but instead involved "federal securities fraud claims regarding the management of funds in non-compliance with published investment objectives." That circular argument fails because the claims in Atkinson, like the claims here, were brought in state court not as "federal securities" claims, but as purported state-law claims, which the court found were precluded -- just as this Court should do here. (Plaintiff's similar attempt (Remand Reply 9 n.6) to distinguish Zoren v. Genesis Energy, L.P., 195 F. Supp. 2d 598, 604-05 (D. Del. 2002) (cited in the Opposition to Motion to Remand ("Remand Opposition") (Dkt. 31) at 11-12) fails for the same reason.) Moreover, the fact that no buyout was involved in Atkinson had no bearing on the court's determination that the first carve-out did not apply. Contrary to Plaintiff's contention, the fact that "some of the same plaintiffs brought cases simultaneously in state and federal court" also did not factor into the court's decision.

[3] Plaintiff argues that the Delaware carve-out "does not require a completed transaction," and suggests that Defendants have asserted this narrow proposition as to both prongs of the carve-out. However, as set forth supra at Point II.A (and in the Remand Opposition at Point II), only the first carve-out requires that a suit "involve" "the purchase or sale of securities." 15 U.S.C. § 78bb(f)(3)(A)(ii)(I).

explained are inapposite because "[e]ach of those cases involved, unlike here, a purchase or sale of securities that had already occurred or was imminent, as well as a <u>communication specifically seeking shareholder approval</u>."  (Remand Opposition 12-13.)

Plaintiff's bald assertion that the May 7, 2010 press release "ultimately concerns decisions of the equity security holders with respect to the <u>eventual</u> vote of their securities" (Opp. 9 (emphasis added)) highlights the premature nature of the whole case:  there may never be any transaction or vote.  The fact that another shareholder has written to ROAC's Board opining that the offered price is too low (Opp. 9) does not change the fact that no transaction has been approved or agreed-to and Defendants have made no "communications that are directly related to the exercise of shareholders' voting rights."  <u>Proctor</u>, 2007 WL 518616, at *7.  How could they have -- there is nothing for anyone to vote on!  Plaintiff cites <u>Greaves</u>, 264 F. Supp. 2d at 1080, on this point (Opp. 9), but in <u>Greaves</u>, unlike here, the company filed a joint proxy/registration statement <u>to encourage shareholders to vote</u> on an agreed-to merger.  <u>Id.</u>  Plaintiff also cites <u>Alessi v. Beracha</u>, 244 F. Supp. 2d 354, 359 (D. Del. 2003), in which shareholders sued in connection with a merger that had <u>already occurred</u>.  <u>Alessi</u>'s reference to SLUSA's legislative history stating that SLUSA is not intended to "interfere with state law" regarding the "purchase or sale of securities" or communications with shareholders "with respect to voting their shares," <u>id.</u>, is, for the reasons stated, inapposite:  here, unlike in <u>Alessi</u>, there has been no "purchase or sale of securities" and shareholders have not been asked to vote on a transaction.[4]

---

[4] <u>Phillips v. Reckson Assocs. Realty Corp.</u>, No. 06-cv-5971, 2006 U.S. Dist. LEXIS 83288, at *6 (E.D.N.Y. Nov. 15, 2006), cited by Plaintiffs for the proposition that the removal statute should be narrowly construed "where it is not clear whether the 'Delaware carve-out'" applies, remanded the case so that the state court could resolve conflicting rulings over the applicable state law.  Here, there has been no state court ruling that would impact this Court's determination.

### III. PLAINTIFF HAS ALLEGED NO COGNIZABLE INJURY

#### A. Plaintiff's Alleged Harm Is Too Remote To Confer Standing

In response to Defendants' assertion that the Complaint should be dismissed on the independent grounds that Plaintiff's alleged harm is entirely speculative, Plaintiff responds that "actual harm does not have had to have occurred" for him to have standing. (Opp. 16.) Rather, he argues, his request for injunctive relief "requiring 'defendants to carry out their fiduciary duties . . . .'" and enjoining "'the consummation of the Proposed Transaction'" (Opp. 16 (quoting Compl. ¶ 41)) is sufficient to confer standing. However, this relief should be denied because there is nothing to enjoin: the proposed transaction has not been agreed-to or approved by ROAC's Special Committee or its Board, and shareholders have not been asked to vote.

Indeed, to the extent any "harm" is alleged, it stems from a series of contingent, indeterminable future events -- i.e., shareholder harm might allegedly occur some day in the future if the proposed transaction is successfully negotiated, if the Special Committee recommends such a deal, if the deal is approved by ROAC's Board of Directors and if ROAC's shareholders are asked to approve the deal. This is hardly "imminent," as required by the Supreme Court. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (standing requires that the alleged injury be "actual or imminent, not conjectural or hypothetical") (internal quotation omitted). The fact that Plaintiff seeks injunctive relief does not change this result. In Fund for Animals v. Babbitt, this Court held that "irreparable harm" (a prerequisite showing for injunctive relief) "is an injury that is not remote or speculative but actual and imminent" and denied plaintiffs' motion for an injunction because their alleged harm "constitute[d] little more than unsubstantiated speculation." 2 F. Supp. 2d. 562, 566-67 (D. Vt. 1996). See also Ocillas Indus., Inc. v. Katz, 677 F. Supp. 1291, 1297-98 (E.D.N.Y. 1987) (denying injunction barring corporation's issuance of stock, because corporation had "no present intention" to issue stock).

7

Plaintiff asserts that "[t]he purpose of an injunction in a merger/tender offer context is to stop a transaction *before* it irreparably harms others." (Opp. 16 (emphasis in original)). Unsurprisingly, the only legal support Plaintiff provides (at Opp. 16-17 and 11 n.3) are a litany of cases not concerning SLUSA (and brought under Delaware law, which does not even apply here) concerning transactions that -- unlike here -- had already been agreed-to (and thus, truly were imminent).[5]

**B.  Contrary To Plaintiff's Assertion, Reincorporation In Vermont Does Not Harm Shareholders -- And The Other "Harm" Plaintiff Asserts Has Already Occurred Is, At Best, Entirely Speculative**

Plaintiff also asserts that shareholders have already been harmed by virtue of (i) ROAC's reincorporation in Vermont; (ii) the Special Committee's purported non-independence; and (iii) Swenson Granite's proposal, insofar as it "capped the trading price of ROAC's shares." (Opp. 17-20.) However, Plaintiff's attempt to reframe his allegations fails.

Plaintiff's contention that ROAC harmed its shareholders by reincorporating in Vermont -- because "Vermont law is far less developed" in corporate matters than Delaware law and "creates potential uncertainties that Defendants may use" to their benefit (Opp. 20) -- in effect suggests that reincorporation in Vermont subjects shareholders to de facto injury. This baseless criticism of Vermont law (brought by lawyers who do not practice in Vermont) was not alleged and should be disregarded. In any case, Plaintiffs do not support their new "injury"

---

[5]  Among other cases, Plaintiff cites In re Transkaryotic, Inc., 954 A.2d 346, 360-62 (Del. Ch. 2008) (denying injunction because "[t]he solicitation of proxies for the shareholder vote approving the merger . . . occurred over three years ago. . . .") (emphasis added); Police & Fire Ret. Sys. v. Bernal, Civ. A. No. 4663-CC, 2009 Del. Ch. LEXIS 111, at *1 (Del. Ch. June 26, 2009) (concerning "motion to enjoin certain provisions of the Agreement and Plan of Merger"); and In re Topps Co. S'holders Litig., 926 A.2d 58, 62 (Del. Ch. 2007) (injunction sought after merger agreement signed and proxy statement issued). In In re Pure Resources, Inc. S'holders Litig., 808 A.2d 421, 447-52 (Del. Ch. 2002), the court found that shareholders had been deceived by materially misleading statements made in SEC filings pursuant to a tender offer. Here, in contrast, there have been no recommendations made to shareholders.

theory with any citation holding that shareholders may be injured by reincorporation. This supposed harm is also speculative (i.e., Defendants "may" use reincorporation to their advantage). Moreover, Plaintiff's primary example of this "harm" -- that "in Vermont, a vote is passed based on a majority of votes actually cast" -- is not even true (and tellingly is made without citation to any Vermont statute). In fact, Vermont law provides that, at a minimum, a plan of merger must be approved by a majority of all votes "entitled to be cast" on the plan by each voting group entitled to vote on the plan. 11A V.S.A. § 11.03. In other words, using Plaintiff's example (Opp. 19), under both Delaware and Vermont law, if 100 shares were entitled to be voted on the proposed transaction and only 49 were voted, the merger could not be approved.

Plaintiff's assertion that the Special Committee is not independent simply because its members are elected by controlling shareholders is akin to suggesting that elected Board members are never independent under such circumstances -- a contention that Plaintiff does not and cannot support. Plaintiff's last contention -- that, in his view, shareholders have "no hope that another bidder might emerge with a superior proposal" (Opp. 21) -- cannot support a claim of injury. The fact remains that Swenson Granite has indeed made a bid, and the Board has a duty to consider it. See Sheinberg v. Fluor Corp., 514 F. Supp. 133, 136-37 (S.D.N.Y. 1981) (denying motion to enjoin tender offer preceding merger and finding that irreparable harm had not been established by "speculative arguments that another 'white knight' may be waiting in the wings"); Hollander v. United States, 354 Fed. Appx. 592, 593 (2d Cir. 2009) (affirming grant of motion to dismiss because alleged injury was "purely speculative").[6]

---

[6] In Am. Gen. Corp. v. Texas Air Corp., No. 8390, 1987 Del. Ch. LEXIS 382 (Del. Ch. Feb. 5, 1987), cited by Plaintiff, the court denied plaintiffs' motion to enjoin a merger.

## IV. PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND HIS COMPLAINT

Plaintiff's request for leave to amend "to the extent the Court believes paragraphs 33 and 36 bring the action within the purview of SLUSA" (Opp. 15) should be rejected, since any amendment would be futile. In Atkinson, the court granted dismissal under SLUSA and denied leave to amend, finding that "[a]ny effort at amendment would be futile because allegations of omissions or other deceitful activity are irreparably interwoven throughout Plaintiff's causes of action." 664 F. Supp. 2d at 907. As in Atkinson, Plaintiff's claims are "irreparably interwoven" with Defendants' alleged omissions. See supra Point I.A.[7] See also Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1288 (10th Cir. 2008) ("Any amendment by Plaintiffs here would have been futile. SLUSA precluded all of the substantive counts that Plaintiffs alleged in their Complaint, so Plaintiffs could not have saved their Complaint by withdrawing a few of the counts.").

## CONCLUSION

Plaintiff's Complaint should be dismissed with prejudice.

| | |
|---|---|
| Dated: August 9, 2010<br>Burlington, Vermont | Respectfully submitted, |
| | /s/ Samuel Hoar, Jr. |
| James R. Carroll (admitted pro hac vice)<br>Nicholas I. Leitzes (admitted pro hac vice)<br>SKADDEN, ARPS, SLATE,<br>    MEAGHER & FLOM LLP<br>One Beacon Street<br>Boston, Massachusetts 02108<br>(617) 573-4800<br>jcarroll@skadden.com<br>nleitzes@skadden.com | Samuel Hoar, Jr.<br>DINSE, KNAPP AND<br>    MCANDREW, P.C.<br>P.O. Box 988<br>209 Battery Street<br>Burlington, Vermont 05402-0988<br>(802) 864-5751<br>shoar@dinse.com<br><br>Counsel for Defendants James L. Fox, Pamela G. Sheiffer and Frederick E. Webster, Jr. |

---

[7] In Simon v. Stang, No. C 10-00262, 2010 U.S. Dist. LEXIS 46531, at *25 (N.D. Cal. Apr. 8, 2010), cited by Plaintiff, in contrast, leave to amend was allowed because a count of the complaint did "not specifically allege a misrepresentation."

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document has been filed electronically and is available for viewing and downloading from the ECF system. I further certify that the following counsel of record will be served by the ECF system:

James W. Spink
Mary N. Peterson
SPINK & MILLER, PLC
One Lawson Lane
Burlington, VT 05401
(802) 864-1100
jspink@spinkmiller.com
mpeterson@spinkmiller.com

Wilbur A. Glahn III (admitted pro hac vice)
MCLANE, GRAF, RAULERSON &
    MIDDLETON, P.A.
900 Elm Street
P.O. Box 326
Manchester, NH  03105
(603) 625-6464
bill.glahn@mclane.com

Counsel for Defendants
Rock of Ages Corporation and Laura Plude


Sean M. Gorman
Edward A. Haffer (admitted pro hac vice)
SHEEHAN, PHINNEY,
    BASS + GREEN, P.A.
1000 Elm Street, 17th Floor
Manchester, NH 03101
(603) 668-0300
sgorman@sheehan.com
ehaffer@sheehan.com

Counsel for Defendant
Swenson Granite Company, LLC

Walter E. Judge Jr.
DOWNS, RACHLIN &
    MARTIN, PLLC
Courthouse Plaza
199 Main Street
P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375
wjudge@drm.com

Counsel for Defendants
Kurt Swenson, Donald LaBonte,
Richard Kimball, and Charles Waite


Daniel P. Richardson
TARRANT, GILLES, MERRIMAN &
    RICHARDSON
44 East State Street
P.O. Box 1440
Montpelier, VT 05601-1440
(802) 223-1112
drichardson@tgrvt.com

Chet B. Waldman (admitted pro hac vice)
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
(212) 759-4600
cwaldman@wolfpopper.com

Counsel for Plaintiff


Dated: August 9, 2010                                          /s/  Samuel Hoar, Jr.
                                                                                 Samuel Hoar, Jr.