# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
12/12/12
BY _____PC_____
DEPUTY CLERK

TODD SEMON and JEROME MEISTER, on behalf of themselves, and all others similarly situated,

                Plaintiffs,

      v.

KURT M. SWENSON, JAMES L. FOX, RICHARD C. KIMBALL, DONALD LABONTE, PAMELA G. SHEIFFER, and FREDERICK E. WEBSTER, JR.,

                Defendants.

Case No.  5:10-cv-00143-cr

## STIPULATION AND AGREEMENT OF SETTLEMENT AND RELEASE

       This Stipulation And Agreement Of Settlement And Release is entered into as of December 6, 2012 (the "Stipulation" or "Settlement Stipulation"), by and among the undersigned parties (the "Parties") to the above-captioned class action (the "Action") pending before the United States District Court for the District of Vermont (the "Court"), through their respective attorneys, subject to approval by this Court:

       **WHEREAS:**

       A.     Plaintiff Todd Semon initiated this Action on behalf of himself and all other public shareholders of Rock of Ages Corporation ("ROAC" or the "Company"), challenging a proposal announced on May 7, 2010 that led to a definitive merger agreement (the "Merger Agreement"), and eventually a completed merger transaction on January 19, 2011 (the "Transaction" or "Merger"), pursuant to which ROAC was acquired by Swenson Granite

Company LLC ("Swenson Granite") and its wholly owned subsidiary Granite Acquisition LLC

("Granite Acquisition") for $5.25 per share in cash (the "Merger Consideration"). ROAC

shareholders who also owned any membership interest in Swenson Granite were given the option

to convert some or all of their ROAC shares into Swenson Granite shares in lieu of receiving the

Merger Consideration for those shares, assuming that they had a sufficient number of ROAC

shares to do so;

    B. The Action was commenced in state court in Vermont, Washington

County on May 19, 2010 in a case captioned *Semon v. Rock of Ages Corp., et al.*, No. 356-5-10

Wncv, against ROAC's Board of Directors (the "Board"): Kurt M. Swenson, James L. Fox,

Pamela G. Sheiffer, Frederick E. Webster, Jr., Richard C. Kimball and Donald Labonte (who

was also ROAC's Chief Executive Officer), as well as against Charles M. Waite (a former

ROAC director), ROAC's Chief Financial Officer Laura A. Plude, ROAC, and Swenson Granite

(collectively, the "Original Defendants"), following the May 7, 2010 announcement by ROAC

that its Board had received an unsolicited proposal from Swenson Granite to purchase all of the

outstanding shares of the Company for $4.38 per share in cash (the "Initial Offer Price");

    C. Following Swenson Granite's proposal, the Board established a special

committee (the "Special Committee") to evaluate and explore potential alternatives to that

proposal;

    D. The initial complaint alleged that the Merger was part of a scheme that

enabled Defendant Swenson, the non-executive Chairman of ROAC and Chairman of Swenson

Granite and certain affiliated persons (the "Swenson Granite Group") to acquire the Company

for inadequate consideration and in breach of the individual defendants' fiduciary duties;

E.     The Action was subsequently removed to the United States District Court for the District of Vermont on June 14, 2010;

F.     The Original Defendants moved to dismiss the initial complaint on June 21, 2010;

G.     The Court held a hearing in Vermont on September 13, 2010, heard oral argument on outstanding motions, including the motions to dismiss, and took the motions under advisement;

H.     On October 18, 2010, the Original Defendants filed with the Court a Notice of a press release announcing that ROAC had entered into the Merger Agreement with Swenson Granite;

I.     On November 22, 2010, Plaintiff Semon's counsel filed a motion to amend the complaint, which attached a Proposed Verified Amended Class Action Complaint (the "Amended Complaint"). The Amended Complaint asserted allegations, beyond those asserted in the initial complaint, regarding the Merger process and price. According to the Amended Complaint, this process was inherently flawed as the result of the controlling stake in the Company held by the Swenson Granite Group. Moreover, the Amended Complaint alleged that the financial advisor hired by the Special Committee -- Covington Associates, LLC ("Covington") -- was conflicted, based on a pre-existing relationship with ROAC and the promise of a "success fee" upon completion of the Merger. The Special Committee's process of reviewing and approving the Merger was further tainted, according to Plaintiffs, by including in its efforts the Company's regular outside counsel, McLane, Graf, Raulerson & Middleton PA ("McLane"), which had also done legal work for Defendant Swenson and his brother Kevin Swenson personally, as well as Swenson Granite. The Amended Complaint also alleged that the

3

preliminary proxy statement on Form 14A filed by the Company with the SEC on October 29, 2010 contained inadequate disclosures, in that it allegedly omitted certain material information;

J. The Amended Complaint also added Jerome Meister as a representative plaintiff and Granite Acquisition as an additional defendant, and omitted Charles M. Waite as a defendant. The Original Defendants opposed the motion to amend, which was fully briefed and presented to the Court;

K. On December 15, 2010, ROAC filed its definitive proxy statement (the "Definitive Proxy") with the U.S. Securities and Exchange Commission (the "SEC"). The Definitive Proxy was mailed to ROAC's then-existing shareholders and contained revised language that mooted various of Plaintiffs' disclosure claims in the Amended Complaint;

L. On January 18, 2011, ROAC held a special meeting of shareholders. According to the inspector of voting, the Merger Agreement was adopted by the requisite vote of shareholders required pursuant to the Merger Agreement, in that: (i) a majority of the votes represented by all of ROAC's outstanding capital stock were voted in favor of the Merger, and (ii) a majority of "minority" Class A shares outstanding (*i.e.*, Class A shares not owned by someone who also owned a membership interest in Swenson Granite) were voted in favor of the Merger. Plaintiffs did not seek to enjoin the Merger;

M. At the close of business on January 19, 2011, the Merger was completed and the Company's Class A common stock ceased trading on the NASDAQ Global Market. ROAC shareholders were subsequently paid the Merger Consideration;

N. After the closing of the Merger, two former ROAC shareholders, Lance Gad and Ethan Starr (the "Dissenting Shareholders"), sought the remedy of appraisal pursuant to Chapter 13 of the Vermont Business Corporation Act. The Company thereafter commenced an

action in Vermont Superior Court captioned *Rock of Ages Corporation v. Lance Gad and Ethan Starr*, No. 182-3-11 Wncv (the "Appraisal Action") to contest the Dissenting Shareholders' claims. The Appraisal Action is ongoing and the parties are engaged in discovery;

        O.    On March 29, 2011, the Court granted Plaintiff Semon's motion to amend the initial complaint, and Plaintiffs Semon and Meister filed the Amended Complaint;

        P.    On April 15, 2011, the Original Defendants (other than Charles M. Waite, who was no longer a party to the Action) filed motions to dismiss the Amended Complaint, arguing that, among other things, the Merger (i) was designed to, and in fact did, comply with all applicable laws, (ii) was determined by the independent Special Committee to be fair to shareholders, (iii) was approved by a majority of shareholders who were unaffiliated with any Original Defendant; (iv) provided an 84% premium to shareholders, and (v) was in accordance with all of Defendants' duties as ROAC Board members. Thereafter, Plaintiffs opposed the motions to dismiss, and reply and sur-reply papers were filed;

        Q.    The Court presided over oral argument on the motions to dismiss the Amended Complaint on September 13, 2011, and took them under advisement;

        R.    On December 23, 2011, the Court issued an opinion and order denying in part, and granting in part, the Original Defendants' motions to dismiss the Amended Complaint as follows: (i) certain monetary claims against the individual defendants were dismissed, except to the extent that they allege conduct in violation of 11A V.S.A. § 8.30(d); (ii) the claims against Defendants Plude and Labonte challenging their conduct taken as ROAC officers were dismissed, resulting in Defendant Plude's dismissal from the Action; (iii) the allegations based on purportedly inadequate disclosures were dismissed entirely; (iv) the deal protection claims

were sustained; and (v) ROAC, Swenson Granite, and Granite Acquisition were dismissed from the Action;

S.      On January 6, 2012, the remaining defendants, Kurt M. Swenson, James L. Fox, Richard C. Kimball, Donald Labonte (solely in his capacity as director), Pamela G. Sheiffer, and Frederick E. Webster, Jr. ("Defendants"), answered the Amended Complaint, denying any and all liability, and asserted affirmative defenses;

T.      On February 1, 2012, the Original Defendants moved for entry of separate and final judgment with respect to the dismissed Original Defendants under Federal Rule of Civil Procedure ("Rule") 54(b) and to amend the caption of the case.  Plaintiffs opposed the entry of the separate and final judgment portion of that motion and the Court held a hearing on April 2, 2012, at which oral argument was presented.  The Court granted the unopposed motion to amend the caption, but denied the motion for entry of separate and final judgment;

U.      Discovery proceeded.  Over the course of discovery, Defendants produced thousands of pages of documents and other information in response to multiple document requests and interrogatories served by Plaintiffs' counsel, and Plaintiffs likewise produced documents and other responses to Defendants in response to Defendants' multiple document requests and interrogatories;

V.      Plaintiffs' counsel conducted depositions of Defendants Swenson and Fox;

W.      Plaintiffs' counsel also obtained subpoenaed documents from numerous third parties, including Covington and McLane, and took the deposition of Covington;

X.      On April 16, 2012, Plaintiffs filed a motion to certify the Action as a class action (the "Class Certification Motion"), along with accompanying briefs, an affidavit, and numerous exhibits.  Defendants subsequently opposed the Class Certification Motion;

Y.      Between the time the Class Certification Motion was filed and Defendants' opposition was filed, Defendants' counsel deposed Plaintiffs Semon and Meister;

Z.      Thereafter, the Parties prepared and participated in an early neutral evaluation (the "Mediation") before JAMS mediator David Geronemus, Esq. (the "Mediator") on July 26, 2012.  Ahead of the Mediation, the Parties exchanged and submitted Mediation statements.  The Mediation did not resolve the Action but did narrow the differences between the Parties' positions;

AA.     Plaintiffs submitted expert valuation reports to Defendants on September 24, 2012;

BB.     Subsequent to the Mediation, the Parties, by their counsel, further conducted arm's-length negotiations, with the aid of the Mediator, to reach a resolution of the Action;

CC.     Plaintiffs represent to have owned at all relevant times shares of ROAC common stock, for which proof of ownership was provided to Defendants' counsel;

DD.     After extensive arm's-length negotiations, counsel to the Parties have reached an agreement in principle concerning the proposed Settlement of the Action (defined below), subject to approval by the Court;

EE.     On October 5, 2012, Plaintiffs notified the Court of the Parties' agreement in principle by filing a letter with the Court;

FF.     Based upon their investigation, Plaintiffs and their counsel have concluded that the terms and conditions of the settlement described in this Stipulation (the "Settlement") are fair, reasonable, adequate to, and in the best interests of, the Class (defined below), and, subject

to the approval of the Court, have agreed to settle the claims raised in the Action against Defendants pursuant to the terms and provisions of this Stipulation;

GG.    Defendants have each denied, and continue to deny, that they have committed or aided and abetted in the commission of any breach of duty to Plaintiffs, ROAC, ROAC's shareholders, or any other person or entity, or committed any violation of law or engaged in any of the wrongful acts alleged in the Action, and expressly maintain that they have complied with their fiduciary and other legal duties. Defendants are entering into the Stipulation solely because the Settlement would eliminate the burden, inconvenience, expense, risk, distraction, and uncertainties inherent in further litigation;

HH.    In connection with settlement discussions and negotiations leading to this proposed Settlement, counsel for the Parties have not discussed the appropriateness or amount of any application by Plaintiffs' counsel for an award of attorneys' fees and expenses; and

II.    The Parties wish to settle and resolve the claims asserted by Plaintiffs and all claims relating to or arising out of the Merger, and the Parties have, following arm's-length negotiations, reached an agreement in principle as set forth in this Stipulation, providing for the Settlement of the Action on the terms and subject to the conditions set forth below, and the Parties believe that the Settlement is in the best interests of the Parties and ROAC's public shareholders.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** subject to the approval of the Court and pursuant to Rule 23, for the good and valuable consideration set forth herein and conferred on Plaintiffs and the Class (defined below), that the Action shall be settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions:

8

## SETTLEMENT CONSIDERATION

1.     In consideration for the full and final Settlement and release of all Settled Claims (defined below) and dismissal with prejudice of the Action, Defendants will pay $3,200,000 (the "Gross Settlement Payment"), plus all costs and expenses related to sending out and publishing Notice to the Class and all costs and expenses relating to the distribution of the Net Settlement Payment (defined below) (collectively, "Notice and Administrative Costs"). The Gross Settlement Payment plus Defendants' agreement to pay all Notice and Administrative Costs together constitutes the "Settlement Consideration."

## PLAN OF ALLOCATION

2.     As detailed below in Paragraphs 23 through 26 herein, in connection with this Settlement, Plaintiffs' counsel will be seeking an award of fees and reimbursement of their out-of-pocket expenses, and Plaintiffs will be seeking an incentive award (the "Plaintiffs' Award"), both from the Gross Settlement Payment. The Gross Settlement Payment less any payment for fees and expenses to Plaintiffs' counsel and any Plaintiffs' Award constitutes the "Net Settlement Payment." Defendants will coordinate payment of the Net Settlement Payment on a pro rata basis to members of the Class (defined below) who held shares of ROAC common stock as of the close of business on January 19, 2011 (the "Record Date") and who exchanged any of those shares for the Merger Consideration, subject to the limitations on Excluded Shareholders (defined below) ("Eligible Holders"). Defendants have engaged Rust Consulting, Inc., P.O. Box 2888, Faribault, Minnesota 55021-8688 ("Rust") to facilitate providing Notice to the Class (defined below) in accordance with the procedures set forth in paragraph 10 of the proposed order attached hereto as Exhibit A (the "Preliminary Approval And Scheduling Order"), and to facilitate distributing the Net Settlement Payment to Eligible Holders. The Net Settlement Payment will be allocated to Eligible Holders in proportion to the number of shares

9

they respectively exchanged for the Merger Consideration. No portion of the Gross Settlement Payment shall revert back to Defendants.

3. Prior to payment of the Net Settlement Payment, Defendants will identify for Plaintiffs the number of brokerage firms, banks, and/or other persons or entities who held shares of ROAC common stock in record for the benefit of Class members ("Record Holders") to the extent such Record Holders held ROAC common stock in record for the benefit of Eligible Holders, the number of shares of ROAC common stock each such Record Holder held for the benefit of Eligible Holders, and the amounts to be paid to each Record Holder for the benefit of their respective Eligible Holders.

4. Defendants shall not cause the Net Settlement Payment to be paid to Eligible Holders until (i) the Court has finally certified the Class (defined below); (ii) Final Approval (defined below) of the Settlement has occurred; and (iii) the Court has approved a complete release of all Released Persons (defined below), substantially in the form set forth in Paragraph 8 below.

## CLASS CERTIFICATION

5. The Parties agree that, for settlement purposes only, it is appropriate for the Action to be certified as a class action pursuant to Rules 23(a) and 23(b)(3), on behalf of any and all persons or entities who held shares of ROAC common stock, either of record or beneficially, at any time during the period beginning on and including May 7, 2010, through and including January 19, 2011, including any and all of their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity

10

acting for or on behalf of, or claiming under, any of them, and each of them, except for Excluded Shareholders, defined below (the "Class").

6. Excluded from the Class are (i) the Original Defendants; (ii) immediate family members of any Original Defendant; (iii) any entity in which an Original Defendant has or had a controlling interest; (iv) any person or entity who held shares of ROAC common stock as of the Record Date and had the option to exchange their shares of ROAC common stock for membership interest in Swenson Granite in lieu of receiving Merger Consideration; (v) the Dissenting Shareholders; and (vi) Class members who timely opt out of the Settlement pursuant to the procedures set forth in the form of Notice Of Pendency Of Class Action, Proposed Settlement Of Class Action And Settlement Hearing (the "Notice"), attached hereto as Exhibit B (collectively, "Excluded Shareholders").

7. In the event the Settlement does not become final for any reason, Defendants reserve the right to oppose certification of any plaintiff class in future proceedings.

## **RELEASE OF CLAIMS**

8. Effective upon occurrence of Final Approval (defined below), Plaintiffs and each and every member of the Class (collectively, the "Releasing Persons") shall be deemed to have, and by operation of the Order And Final Judgment approving this Settlement shall have, completely, fully, finally, and forever, compromised, settled, released, discharged, extinguished, relinquished, and dismissed with prejudice any and all claims, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters, and issues of any kind or nature whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, that have been or could have been

11

asserted or in the future can or might be asserted in the Action or in any court, tribunal, or

proceeding (including but not limited to any claims arising under federal, state, foreign or

common law, relating to alleged fraud, breach of any duty, negligence, or violations of federal or

state securities laws or any disclosure law or any claims that could be brought derivatively on

behalf of ROAC) by or on behalf of Plaintiffs in the Action and/or any and all of the members of

the Class, whether individual, class, direct, derivative, representative, legal, equitable, or of any

other type against any and all Defendants and Original Defendants (i.e., Kurt M. Swenson, James

L. Fox, Pamela G. Sheiffer, Frederick E. Webster, Jr., Richard C. Kimball, Donald Labonte,

Charles M. Waite, Laura A. Plude, Rock of Ages Corporation, Swenson Granite LLC and

Granite Acquisition LLC), and/or any of their family members, parent entities, controlling

persons, associates, affiliates, or subsidiaries, and each and all of their respective past or present

officers, directors, shareholders, principals, representatives, employees, attorneys, financial or

investment advisors, consultants, accountants, investment bankers, commercial bankers, entities

providing fairness opinions, engineers, advisors or agents, insurers, heirs, executors, trustees,

general or limited partners or partnerships, members, joint ventures, personal or legal

representatives, estates, administrators, predecessors, successors, and assigns (collectively, the

"Released Persons") that the Releasing Persons ever had, now has, may have had, or hereafter

can, shall, or may have by reason of, arising out of, relating to, or in connection with the

allegations, facts, events, transactions, acts, occurrences, statements, representations,

misrepresentations, omissions, or any other matter, thing, or cause whatsoever, or any series

thereof, embraced, involved, set forth, or otherwise related to the Action, the Amended

Complaint, the Transaction, or the Merger Agreement, including, without limitation, any

disclosures, including those made in any preliminary proxy statement filed by ROAC with the

SEC or in the Definitive Proxy (or any amendment thereto), or in connection with any of the foregoing (collectively, the "Settled Claims"); *provided, however*, that the Settled Claims shall not include the Appraisal Action. Defendants represent that, to their knowledge, there are no pending or threatened lawsuits relating to the Transaction, Merger Agreement or the Definitive Proxy other than this Action and the Appraisal Action.

9.     Upon occurrence of the Final Approval (defined below), Defendants and Released Persons shall be deemed to have, and by operation of the Order And Final Judgment approving this Settlement shall have, completely, fully, finally, and forever released any and all claims, known or unknown, against Plaintiffs and members of the Class and Plaintiffs' counsel in connection with their initiation, prosecution, and settlement of the Action or the Settled Claims; *provided, however*, that Defendants and the Released Persons shall retain the right to enforce the Settlement in the Court, and to oppose or defend any appraisal proceeding brought by any Class member.

## EFFECT OF RELEASE

10.     This Settlement is intended to extinguish all Settled Claims, and the Releasing Persons shall be deemed to expressly waive any and all provisions, rights, and benefits conferred by any law of the United States, any state or territory of the United States, foreign law, or any principle of common law that may have the effect of limiting the releases set forth in paragraphs 8 and 9 above. The Releasing Persons shall be deemed to have expressly waived, relinquished and released, to the extent applicable, and to the full extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, which states that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM

13

OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
HER SETTLEMENT WITH THE DEBTOR.

In addition, the Releasing Persons shall be deemed to have waived any and all

provisions, rights, and benefits conferred by any law of any state or territory of the United States,

or principle of common law, which is similar, comparable, or equivalent to California Civil Code

Section 1542. The Releasing Persons acknowledge that they may discover facts in addition to or

different from those that they now know or believe to be true with respect to the subject matter of

this Settlement, but that it is their intention to completely, fully, finally, and forever

compromise, settle, release, discharge, extinguish, and dismiss any and all Settled Claims,

whether known or unknown, suspected or unsuspected, contingent or absolute, accrued or

unaccrued, apparent or unapparent, direct or indirect, which now exist or heretofore existed or

may hereafter exist and without regard to the subsequent discovery or existence of such

additional or different facts. Plaintiffs acknowledge, and the Class members by operation of law

shall be deemed to have acknowledged, that Unknown Claims (defined below) are expressly

included in the definition of "Settled Claims," and that such inclusion was expressly bargained

for and was a key element of the Settlement and was relied upon by each and all of the Released

Persons in entering into this Stipulation. "Unknown Claims" means any claim that Plaintiffs or

any member of the Class do not know or suspect exists in their, his, her or its favor at the time of

the release of the Settled Claims as against the Released Persons, including without limitation

those that, if known, might have affected the decision to enter into the Settlement.

Plaintiffs acknowledge, and the members of the Class shall be deemed by

operation of the entry of a final order and judgment approving the Settlement to have

acknowledged, that the foregoing waiver was separately bargained for, is an integral element of

14

the Settlement, and was relied upon by each and all of the Defendants in entering into the Settlement.

## SUBMISSION AND APPLICATION TO THE COURT

11.     Promptly after the execution of this Stipulation, the Parties shall apply jointly to the Court for entry of the Preliminary Approval And Scheduling Order, substantially in the form attached hereto as Exhibit A, establishing the procedure for, among other things, (i) the approval of the proposed Notice to the Class; and (ii) the Court's consideration of the proposed Settlement, Class certification, and Plaintiffs' application for attorneys' fees and expenses and a Plaintiffs' Award, including scheduling a final Settlement hearing.

## NOTICE AND ADMINISTRATIVE COSTS

12.     Notice of this proposed Settlement (see Exhibit B) shall be provided by Defendants.  Defendants will assume administrative responsibility for, and will pay all reasonable costs and expenses related to, preparing and disseminating the Notice to the members of the Class.  Defendants will also cause a summary notice to be published in Investor's Business Daily and in a press release, substantially in the form attached as Exhibit C (the "Summary Notice").  Any costs and expenses related to the distribution of the Net Settlement Payment and the administration of the Settlement shall also be paid by Defendants.  As set forth above in paragraph 2 herein and in paragraph 10 of the Preliminary Approval And Scheduling Order, Defendants have retained Rust for Notice and administration purposes, which will work with and rely upon Record Holders to provide Notice and payment of the Net Settlement Payment to former beneficial holders of ROAC stock.

13.     Should the Settlement become null and void pursuant to Paragraph 20 below, Defendants will still be responsible for any Notice and Administrative Costs incurred or

accrued up to the date the Settlement became null and void. Neither Plaintiffs nor any Class member will be responsible for reimbursing Defendants for any Notice and Administrative Costs.

14.    Defendants' counsel shall, at least ten (10) days before the Settlement Hearing (as defined below), file with the Court an appropriate affidavit with respect to the preparation and mailing of the Notice.

## ORDER AND FINAL JUDGMENT

15.    If this Settlement (including any modification thereto made with the consent of the Parties as provided for herein) shall be approved by the Court following a hearing (the "Settlement Hearing") as fair, reasonable, adequate, and in the best interests of the Class, the Parties shall jointly request that the Court enter an Order And Final Judgment substantially in the form attached hereto as Exhibit D.

## CONDITIONS OF SETTLEMENT

16.    Defendants deny and continue to deny that they have committed or aided and abetted the commission of any unlawful or wrongful acts alleged in the Action, and expressly maintain that they diligently and scrupulously complied with their fiduciary duties and other legal duties. Defendants are entering into the Stipulation solely because the proposed Settlement will eliminate the burden and expense of further litigation.

17.    Plaintiffs and their counsel believe that the Settlement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Class and avoids delay in recovery to the Class. Plaintiffs and their counsel also took into consideration the strengths and weaknesses of their claims and determined that the terms of the proposed Settlement are fair, reasonable, adequate, and in the best interest of ROAC's former shareholders.

16

18.     The Settlement is conditioned upon the fulfillment of each of the
following:

(i)     the dismissal with prejudice of the Action without the award of any
damages, costs, fees or the grant of any further relief except for an award of fees and expenses
the Court may make pursuant to paragraph 23 of this Stipulation;

(ii)    the entry of a final judgment in the Action approving the proposed
Settlement and providing for the dismissal with prejudice of the Action and approving the grant
of the release by the Class to the Released Persons of the Settled Claims;

(iii)   the inclusion in the final judgment of a provision enjoining all
members of the Class from asserting any of the Settled Claims; and

(iv)    such final judgment and dismissal of the Action being finally
affirmed on appeal or such final judgment and dismissal not being subject to appeal (or further
appeal) by lapse of time or otherwise.

19.     Each of the Defendants shall have the right to withdraw from the
Settlement in the event that any claims related to the subject matter of the Action are commenced
or prosecuted against any of the Released Persons in any court prior to Final Approval (defined
below) of the Settlement by Class members claiming to have held, in the aggregate, more than
10% of the ROAC common stock held by a Class member or Class members on the Record Date
and (following a motion by Defendants) such claims are not dismissed with prejudice or stayed
in contemplation of dismissal.  In the event such claims are commenced, Plaintiffs and
Defendants agree to cooperate and use their reasonable best efforts to secure the dismissal (or a
stay in contemplation of dismissal following Final Approval (defined below) of the Settlement)

thereof. For the avoidance of doubt, the term "Class members" as used in this provision shall not apply to the Dissenting Shareholders.

20.     This Settlement shall be null and void and of no force and effect, unless otherwise agreed to by the Parties pursuant to the terms hereof, if the Settlement does not obtain Final Approval (defined below); *provided, however*, that any decision by the Court to approve an award of fees and expenses to Plaintiffs' counsel or Plaintiffs' Award less than the amount of the award of fees and expenses or Plaintiffs' Award sought by Plaintiffs (and/or their counsel) shall not void this Stipulation or the Settlement.

21.     In the event that this Settlement is rendered null and void for any reason, the existence of the Settlement or the provisions contained in this Stipulation shall not be deemed to prejudice in any way the respective positions of Plaintiffs or Defendants in the Action, including the right of Defendants to oppose class certification in any future proceedings; shall not be deemed a presumption, a concession, or an admission by Plaintiffs of any infirmity in their claims, or by any Defendant of any fault, liability, or wrongdoing as to any facts, claims, or defenses that have been or might have been alleged or asserted in the Action, or any other action or proceeding; and shall not be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used or referred to by any person in the Action, or in any other action or proceeding, whether civil, criminal, or administrative, for any purpose other than as provided expressly herein; except in any litigation or proceeding arising out of or relating to the Stipulation or this Settlement (*e.g.*, to argue that the Stipulation or the Settlement has *res judicata*, collateral estoppel, or other issue or claim preclusion effect), or relating to Plaintiffs' counsels' application for fees and expenses in the Action.

## FINAL APPROVAL

22.     The approval of this Settlement by the Court shall be considered final ("Final Approval") for purposes of this Stipulation upon the latest of (i) the expiration of the time for the filing or noticing of an appeal or motion for reargument or rehearing (pursuant to Rule 59 or District of Vermont Local Rule 7.0(c)) from the Court's Order And Final Judgment approving the material terms of the Settlement without such appeal or motion having been made; (ii) the date of final affirmance of the Court's Order And Final Judgment on any appeal or reargument or rehearing (pursuant to Rule 59 or District of Vermont Local Rule 7.0(c)); or (iii) the final dismissal of any appeal.

## ATTORNEYS' FEES AND EXPENSES

23.     Plaintiffs' counsel will seek an award of fees and expenses and Plaintiffs will seek the Plaintiffs' Award from the Gross Settlement Payment, subject to the Court's approval. Defendants agree that they and the other Released Persons will take no position regarding the award of fees and expenses or Plaintiffs' Award sought in connection with this Settlement. Plaintiffs' counsel agree not to seek an award of fees and expenses or Plaintiffs' Award in connection with the Settlement other than out of the Gross Settlement Payment in connection with the Action and the Settlement. In the event that the Settlement is not approved, Plaintiffs' counsel reserves the right to submit an application for fees and expenses in connection with their contentions that the Action led to additional disclosures in the Definitive Proxy and/or the price bump between the Initial Offer Price and the Merger Consideration. Defendants reserve the right to oppose any such application.

24.     Any fee or other award to Plaintiffs and/or to Plaintiffs' counsel shall be paid by Defendants to Plaintiffs' counsel (Wolf Popper LLP) within ten (10) days of entry of

judgment awarding fees and expenses, subject to Plaintiffs' counsels' joint and several

obligations to refund or repay within ten (10) days any amounts paid (with accrued interest

thereon) if, for any reason, including as a result of any appeal and/or further proceedings on

remand, or successful collateral attack, the amount awarded is lowered, overturned, or reduced.

If the Settlement is approved, other than payment of fees and expenses that are deducted or paid

from the Gross Settlement Payment subject to the Court's approval, the Released Persons shall

have no liability, in any forum, for any fees, costs, or any expense of any nature to any Releasing

Persons or counsel representing any Releasing Persons; any such liability shall be extinguished

by virtue of the release of the Settled Claims.

     25.    Any failure of the Court to approve a request for attorneys' fees and

expenses in whole or in part shall not affect the remainder of the Settlement.

     26.    Except as provided in paragraphs 12 through 14 herein, Defendants shall

not be required to bear any other expenses, costs, damages, or fees alleged or incurred by

Plaintiffs, by any member of the Class, or by any of their attorneys, experts, advisors, agents, or

representatives.  Defendants shall have no responsibility for, and no liability with respect to, the

allocation of fees or expenses among counsel for Plaintiffs and/or any other person who may

assert a claim to attorneys' fees and expenses.

### BEST EFFORTS

     27.    Plaintiffs and Defendants, and their respective attorneys, agree to

cooperate fully with one another in seeking Court approval of this Settlement, and to use their

best efforts to effect, take, or cause to be taken all actions, and to do, or cause to be done, all

things reasonably necessary, proper, or advisable under applicable laws, regulations, and

agreements to consummate and make effective, as promptly as practicable, this Settlement

(including, but not limited to, using their best efforts to resolve any objections raised to this Settlement) and procure the dismissal of the Action, including any and all complaints filed in the Action, with prejudice and without costs to any party (except as provided for by paragraphs 12 through 14 herein).

28.     Without further order of the Court, Plaintiffs and Defendants may agree to reasonable extensions of time not expressly set forth by the Court in order to carry out any provisions of this Settlement Stipulation pending Final Approval.

## STAY OF PROCEEDINGS

29.     Pending Final Approval of the Settlement by the Court, Plaintiffs and their counsel agree to stay this proceeding and not to initiate any other proceedings other than those incident to the Settlement itself.

30.     The Parties will request the Court to order (in the Preliminary Approval And Scheduling Order) that, pending final determination of whether this Settlement should be approved, Plaintiffs and all members of the Class, and any of them are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action, asserting any Settled Claims, either directly, representatively, derivatively, or in any other capacity, against Defendants or any of the Released Persons. For the avoidance of doubt, this provision shall not apply to the Appraisal Action.

## SETTLEMENT NOT AN ADMISSION

31.     The provisions contained in this Stipulation shall not be deemed a presumption, concession, or admission by any Defendant of any fault, liability or wrongdoing as to any facts or claims that have been or might be alleged or asserted in the Action, or any other action or proceeding that has been, will be, or could be brought, and shall not be interpreted,

construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in

the Action, or in any other action or proceeding, whether civil, criminal, or administrative, for

any purpose other than to enforce the terms of the Settlement, or as provided for expressly

herein. Nor shall the Stipulation and any negotiations, statements, or proceedings in connection

therewith, be construed as or deemed as evidence of, a presumption, concession, or admission by

any Plaintiff or Class member of any defect or weakness in the claims alleged in the Amended

Complaint.

## ENTIRE AGREEMENT; AMENDMENTS

32. This Settlement Stipulation constitutes the entire agreement among the

Parties with respect to the subject matter hereof, and may be modified or amended only by a

writing, signed by all of the signatories hereto, that refers specifically to this Stipulation.

## COUNTERPARTS

33. This Settlement Stipulation may be executed in any number of actual or

telecopied counterparts and by each of the different Parties on several counterparts, each of

which when so executed and delivered will be an original. The executed signature page(s) from

each actual or telecopied counterpart may be joined together and attached and will constitute one

and the same instrument.

## GOVERNING LAW; CONTINUING JURISDICTION

34. This Stipulation and the Settlement contemplated herein shall be governed

by, and construed in accordance with, the laws of the State of Vermont, without regard to

Vermont's principles governing choice of law. The Parties agree that any dispute arising out of

or relating in any way to this Settlement shall not be litigated or otherwise pursued in any forum

or venue other than the Court. Each party hereto (i) consents to personal jurisdiction in any such

22

action (but in no other action) brought in the Court; (ii) consents to service of process by registered mail upon such party and/or such party's agent; (iii) waives any objection to venue in the Court and any claim that Vermont or the Court is an inconvenient forum; and (iv) waives any right to demand a jury trial as to any such action. The Parties submit themselves to the exclusive jurisdiction of the Court for the enforcement, interpretation of the Stipulation and its exhibits, and all other matters regarding or relating to them.

## CONSTRUCTION

35.     This Settlement Stipulation shall be construed in all respects as jointly drafted and shall not be construed, in any way, against any Party on the ground that the Party or its counsel drafted this Stipulation.

36.     Paragraph titles have been inserted for convenience only and will not be used in determining the terms of this Stipulation.

37.     The terms and provisions of this Stipulation are intended solely for the benefit of the Released Persons, the Class, and their respective successors and permitted assigns, and it is not the intention of the Parties to confer rights or remedies upon any other person or entity, except any attorneys' fees and expenses to be paid pursuant to the terms of this Stipulation.

## BINDING EFFECT

38.     This Stipulation, and all rights and powers granted hereby, will bind and inure to the benefit of the Parties hereto and their respective legal representatives, agents, executors, heirs, administrators, transferees, successors, assigns, employees, employers, insurers and reinsurers, and upon any corporation, partnership, or other entity into or with which any Party may merge or consolidate.

## AUTHORITY

39.    This Stipulation will be executed by counsel for the Parties, each of whom represents and warrants that he has the authority from his client(s) to enter into this Stipulation and that the Stipulation shall be binding on his client(s) in accordance with its terms.

## REPRESENTATION AND WARRANTY

40.    Each Plaintiff and his counsel represent and warrant that (i) the Plaintiff was a ROAC stockholder at all relevant times and continued to hold his stock in ROAC as of the Record Date, and (ii) none of the Plaintiff's claims or causes of action referred to in the Amended Complaint or this Stipulation, or any claims the Plaintiff could have alleged, have been assigned, encumbered, or in any manner transferred in whole or in part.

## NO WAIVER

41.    Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Party, notwithstanding such failure, shall have the right thereafter to insist on the strict performance of any and all of the provisions of this Stipulation to be performed by such other Party.  No waiver, express or implied, by any Party of any breach or default in the performance by the other Party of its obligations under this Stipulation shall be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

Dated:  December 6, 2012

Respectfully submitted,

/s/  Lester L. Levy
Lester L. Levy
Chet B. Waldman (admitted pro hac vice)
Patricia I. Avery
Natalie M. Mackiel
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022
(212) 759-4600
cwaldman@wolfpopper.com

/s/  Daniel P. Richardson
Daniel P. Richardson
TARRANT, GILLIES, MERRIMAN &
    RICHARDSON
44 East State Street
P.O. Box 1440
Montpelier, Vermont 05601-1440
(802) 223-1112
drichardson@tgrvt.com

Counsel for Plaintiffs
Todd Semon and Jerome Meister

/s/  James R. Carroll
James R. Carroll (admitted pro hac vice)
Nicholas I. Leitzes (admitted pro hac vice)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800
jcarroll@skadden.com
nleitzes@skadden.com

/s/  Samuel Hoar, Jr.
Samuel Hoar, Jr.
DINSE, KNAPP & MCANDREW, P.C.
P.O. Box 988, 209 Battery Street
Burlington, Vermont 05402-0988
(802) 864-5751
shoar@dinse.com

Counsel for Defendants
James L. Fox, Pamela G. Sheiffer
and Frederick E. Webster Jr.

/s/  Walter E. Judge, Jr.
Walter E. Judge, Jr.
DOWNS, RACHLIN &
    MARTIN, PLLC
P.O. Box 190
Courthouse Plaza
199 Main Street
Burlington, Vermont 05402-0190
(802) 863-2375
wjudge@drm.com

Counsel for Rock of Ages Corporation,
Swenson Granite Company, LLC, Granite
Acquisition, LLC, Laura A. Plude, and
Defendants Kurt M. Swenson, Richard C.
Kimball and Donald Labonte