U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

2013 MAR 21  AM 10: 21

CLERK
BY_____
DEPUTY CLERK

| | |
|---|---|
| TODD SEMON and JEROME MEISTER, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KURT M. SWENSON, JAMES L. FOX, RICHARD C. KIMBALL, DONALD LABONTE, PAMELA G. SHEIFFER, and FREDERICK E. WEBSTER JR.,<br><br>Defendants. | Case No. 5:10-cv-00143-cr |

## ORDER AND FINAL JUDGMENT

This matter came before the court on March 11, 2013 for a hearing on Plaintiffs' Motion for Entry of a Final Judgment Approving the Settlement Certifying the Class, and Granting Plaintiff's Counsel's Fees and Reimbursement of Expenses and Plaintiff's Award. (Doc. 187) (the "Settlement Hearing") pursuant to the Preliminary Approval and Scheduling Order entered by this court on January 7, 2013, upon the Stipulation and Agreement Of Settlement and Release dated December 6, 2012 (the "Stipulation") filed in the above-captioned action (the "Action"), which (along with the Preliminary Approval and Scheduling Order) is incorporated herein by reference. Based upon the evidence in the record and the court's findings of fact and conclusions of law as set forth on the record at the Settlement Hearing, IT IS HEREBY ORDERED, ADJUDGED, and DECREED, as follows:

## Section I: Settlement Approval and Class Certification.

1. Unless otherwise defined herein, all defined terms shall have the meanings set forth in the Stipulation.

2. The Notice of Pendency of Class Action, Proposed Settlement of Class Action and Settlement Hearing (the "Notice") has been disseminated to the Class (as defined below) pursuant to and in the manner directed by the Preliminary Approval and Scheduling Order. The Summary Notice (as defined in the Preliminary Approval and Scheduling Order) has been published in *Investor's Business Daily* and issued in a press release as directed by the court. Proof of the mailing of the Notice and the publication of the Summary Notice has been filed with the court, and an opportunity to be heard has been offered to all Parties to the Action, the Class, and interested persons. Class members have been offered the opportunity to request to be excluded from the Class or to object to the Settlement or any aspect of it. The form and manner of the Notice and Summary Notice is hereby determined to have been the best notice practicable and reasonable under the circumstances and in compliance with Fed. R. Civ. P. 23, due process, and applicable law, and it is further determined that all members of the Class are bound by the Order and Final Judgment herein.

3. Based on the record of the Action, and the court's findings of fact on the record at the Settlement Hearing, the court finds, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and 23(g), that:

   a. (i) the Class, as defined below, is sufficiently numerous that joinder of all members is impracticable, (ii) there are questions of law and fact common to the Class, (iii) the claims of Plaintiffs are typical of the claims of the Class, and (iv) Plaintiffs and their counsel have fairly and adequately protected the interests of the Class;

    b.  the requirements of Rules 23(a), 23(b)(3) and 23(g) have been also satisfied; and

    c.  the requirements of due process and applicable law have been satisfied in connection with the Notice.

  4.  The Action is certified as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of any and all persons or entities who held shares of Rock of Ages Corporation ("ROAC" or the "Company") common stock, either of record or beneficially, at any time during the period beginning on and including May 7, 2010, through and including January 19, 2011 (the "Class Period"), including any and all of their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, except for Excluded Shareholders, defined below (the "Class").[1]

  5.  Excluded from the Class are (i) the Original Defendants; (ii) immediate family members of any Original Defendant; (iii) any entity in which an Original Defendant has or had a controlling interest; (iv) any person or entity who held shares of ROAC common stock as of the Record Date and had the option to exchange their shares of ROAC common stock for membership interest in Swenson Granite in lieu of receiving Merger Consideration; (v) the two former ROAC shareholders, Lance Gad and Ethan Starr, who sought the remedy of appraisal pursuant to Chapter 13 of the Vermont Business Corporation Act (the "Dissenting

---

[1] As set forth in the Stipulation, the Class Period extends between the May 7, 2010 date of the public announcement of Swenson Granite's initial offer to acquire the outstanding stock of ROAC and the January 19, 2011 date of the closing of the Merger (the "Record Date").

Shareholders"); and (vi) Class members who timely opted out of the Settlement pursuant to the procedures set forth in the Notice (collectively, "Excluded Shareholders").

6. Plaintiff Jerome Meister is certified as the Class Representative. Wolf Popper LLP is certified as Plaintiffs' Lead Counsel pursuant to Rule 23(g); and Tarrant, Gillies, Merriman & Richardson is certified as Plaintiffs' Liaison Counsel.

7. The Stipulation and the terms of the Settlement as described in the Stipulation and the Notice are found to be fair, reasonable, adequate, and in the best interests of the Class, and are hereby approved pursuant to Fed. R. Civ. P. 23(e). The Parties are hereby authorized and directed to comply with and to consummate the Settlement in accordance with the terms and provisions set forth in the Stipulation, and the Clerk of the Court is directed to enter and docket this Order and Final Judgment in the Action.

8. This Order and Final Judgment shall not constitute any evidence or admission by any party herein that any acts of wrongdoing have been committed by any of the Parties to the Action and should not be deemed to create any inference that there is any liability therefor.

9. The Action is hereby dismissed with prejudice on the merits and, except as provided herein, without costs.

10. The Plaintiffs and each and every member of the Class who did not elect to exclude themselves by written communication postmarked on or before twenty-one (21) days prior to the date of the Settlement Hearing, as required in the Notice (collectively, the "Releasing Persons"), shall be deemed to have, and by operation of this Order and Final Judgment, shall have, completely, fully, finally, and forever, compromised, settled, released, discharged, extinguished, relinquished, and dismissed with prejudice any and all claims, demands, rights,

actions or causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters, and issues of any kind or nature whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, that have been or could have been asserted or in the future can or might be asserted in the Action or in any court, tribunal, or proceeding (including but not limited to any claims arising under federal, state, foreign or common law, relating to alleged fraud, breach of any duty, negligence, or violations of federal or state securities laws or any disclosure law or any claims that could be brought derivatively on behalf of ROAC) by or on behalf of Plaintiff in the Action and/or any and all of the members of the Class, whether individual, class, direct, derivative, representative, legal, equitable, or any other type in their capacity as ROAC shareholders against any and all Defendants and Original Defendants (identified as Kurt M. Swenson, James L. Fox, Pamela G. Sheiffer, Frederick E. Webster, Jr., Richard C. Kimball, Donald Labonte, Charles M. Waite, Laura A. Plude, Rock of Ages Corporation, Swenson Granite LLC and Granite Acquisition LLC), and/or any of their immediate family members, parent entities, controlling persons, associates, affiliates, or subsidiaries and each and all of their respective past or present officers, directors, shareholders, principals, representatives, employees, attorneys, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, entities providing fairness opinions, engineers, advisors or agents, insurers, heirs, executors, trustees, general, or limited partners or partnerships, members, joint ventures, personal or legal representatives, estates, administrators, predecessors, successors, and assigns (collectively, the "Released Persons") that the Releasing Persons ever had, now has, may have had, or hereafter can, shall, or may have by reason of, arising out of, relating to, or in connection with the allegations, facts,

5

events, transactions, acts, occurrences, statements, representations, misrepresentations, omissions, or any other matter, thing, or cause whatsoever, or any series thereof, embraced, involved, set forth, or otherwise related to the Action, the Amended Complaint, the Transaction, or the Merger Agreement, including, without limitation, any disclosures, including those made in any preliminary proxy statement filed by ROAC with the SEC or in the Definitive Proxy (or any amendment thereto), or in connection with any of the foregoing (collectively, the "Settled Claims"); *provided, however*, that the Settled Claims shall not include the Appraisal Action.

11. Defendants and Released Persons shall be deemed to have, and by operation of the Order and Final Judgment approving this Settlement shall have, completely, fully, finally, and forever released any and all claims, known or unknown, against Plaintiffs and the members of the Class and Plaintiffs' counsel in connection with their initiation, prosecution, and settlement of the Action or the Settled Claims; provided, however, that the Defendants and Released Persons shall retain the right to enforce the Settlement in the court, and to oppose or defend any appraisal proceeding brought by any Class member.

12. The releases contemplated by this Order shall extend to claims that the Releasing Persons do not know or suspect to exist at the time of the release, including without limitation those which, if known, might have affected their decision to enter into the release or whether or how to object to the Settlement ("Unknown Claims"). Plaintiff acknowledges, and the members of the Class by operation of law shall be deemed to have acknowledged, that Unknown Claims are expressly included in the definition of "Settled Claims," and that such inclusion was expressly bargained for and was a key element of the Settlement and was relied upon by each and all of the Released Persons in entering into the Settlement. The Settlement hereby extinguishes all Settled Claims, and the Releasing Persons shall be deemed to waive and

relinquish to the fullest extent permitted by law any and all provisions, rights, and benefits conferred by any law of the United States, any state or territory of the United States, foreign law or any principle of common law, or any other law, that may have the effect of limiting the releases set forth in paragraphs 10 and 11 above. The Releasing Persons shall be deemed to waive and relinquish, to the extent applicable, and to the full extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which states that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Releasing Persons shall be deemed to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542. The Releasing Persons acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this Settlement, but that it is their intention to fully, finally, and forever compromise, settle, release, discharge, extinguish, and dismiss any and all Settled Claims, whether known or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which now exist or heretofore existed or may hereafter exist and without regard to the subsequent discovery or existence of such additional or different facts.

13.   Plaintiffs' counsel is hereby awarded attorneys' fees in the amount of $953,600.00, and expenses of $98,168.62, both to be paid from the Gross Settlement Payment pursuant to the timing and procedures set forth in paragraph 24 of the Stipulation, which amounts the court finds to be fair and reasonable and which shall be paid to Plaintiffs' counsel in

accordance with the terms of the Stipulation. The court's findings and conclusions regarding attorney's fees and expenses are set forth in Section II below.

14. Plaintiff Semon is hereby awarded $5,000, to be paid from the Gross Settlement Payment pursuant to the timing and procedures set forth in paragraph 24 of the Stipulation, to reimburse him for his time and expenses spent on prosecuting the Action, which amount the court finds to be fair and reasonable and which shall be made payable to the Estate of Todd Semon. No further incentive award shall be due to any other class representative or member.

15. Defendants shall cause the Net Settlement Payment to be allocated to Eligible Holders pursuant to the timing and procedures set forth in paragraphs 2 through 4 of the Stipulation.

16. Plaintiffs and the members of the Class, and any of their respective representatives, trustees, successors, heirs and assigns, are hereby individually and severally permanently barred and enjoined from instituting, commencing, prosecuting, participating in or continuing any action or other proceeding in any court or tribunal of this or any other jurisdiction, either directly, representatively, derivatively or in any other capacity, against any of the Released Persons, based upon, arising out of, or in any way related to or for the purpose of enforcing any Settled Claim, all of which Settled Claims are hereby declared to be compromised, settled, released, dismissed with prejudice, and extinguished by virtue of the proceedings in this Action and this Order and Final Judgment.

**Section II. Plaintiffs' Expenses and Attorney's Fee Award.**

Plaintiffs request an attorney's fee award of $953,600 for the "over 3,250 hours of attorney and paralegal work" Plaintiffs' counsel expended in prosecuting this Action. (Doc. 187-

1 at 31.) The request represents 29.8 percent of the Settlement Fund. Plaintiffs also request reimbursement of litigation expenses in the amount of $98,168.62. Defendants do not oppose either request and have asked the court to approve them.

Fed. R. Civ. P. 23(h) authorizes the court to award "reasonable" attorney's fees to counsel of a certified class. "[W]here an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class . . . the attorneys whose efforts created the fund are entitled to a reasonable fee -- set by the court -- to be taken from the fund." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). In the Second Circuit, two methods guide the court's determination of a reasonable attorney's fee in a class action settlement. "The first is the lodestar, under which the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id.* "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id.* (citation omitted). "The second method is simpler. The court sets some percentage of the recovery as a fee." *Id.*

Plaintiffs argue that the lodestar method is more appropriate for calculating the fee award in this case, in light of the benefits achieved for the class which they contend extend beyond the $3.2 million gross settlement payment. Plaintiffs describe those benefits as consisting of additional disclosures related to the ROAC merger that mooted their claims for injunctive relief and an increase in the share price paid to class members from $4.38 to $5.25, which they assert may be attributable to the pendency of this litigation.

Using a lodestar calculation, Plaintiffs contend that the requested fee award of $953,600

represents a "discount of more than [fifty percent] based on Plaintiffs' counsel's lodestar of $1,933,197.50." (Doc. 187-1 at 31.) Rather than consider their actual billing rates, however, Plaintiffs ask the court to find that the requested fee award, when considered in conjunction with the discount from their actual lodestar, reflects rates of approximately $365 to $392 for partners, and $247 for associates.

Reasonable attorney's fees typically "reflect the prevailing rates in the relevant market." *Donoghue v. Morgan Stanley High Yield Fund*, 2012 WL 6097654, at *1 (S.D.N.Y. Dec. 7, 2012); *see also Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 2011 WL 1002439, at *6 (S.D.N.Y. Mar. 16, 2011) ("Courts are . . . instructed to look to market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'") (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)). Both Plaintiffs' and Defendants' local counsel acknowledge Plaintiffs' adjusted rates reflect the upper end of the market rate in the District of Vermont. The Action, however, involved factual and legal issues regarding securities law and thus national rates may be more appropriate. *See Davis v. Central Vermont Public Serv. Corp.*, 2012 WL 4471226 at *11 (D. Vt. Sept. 27, 2012). Under either analysis, the requested rates appear reasonable.

To further assess the reasonableness of the requested hourly rates, the court "cross-checks" the hours expended in conjunction with a "blended rate" of partner and associate rates. *See Davis*, 2012 WL 4471226, at *11 (quoting 2. J. McLaughlin, Class Actions: Law and Practice § 6.23 at 6-109) ("When applying the lodestar cross-check [for reasonableness], courts insist on application of a blended rate of partners and associates."); *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 2013 WL 950573, at *7 (E.D.N.Y. Mar. 12, 2013) (noting that the Second Circuit has never explicitly endorsed the use of a blended rate, but

collecting cases approving a blended rate). In this case, as adjusted by the discount from Plaintiffs' actual lodestar, the partner and associate rates yield a blended rate of $344.66 per hour. This blended rate serves as at least some corroboration of the reasonableness of the adjusted rates. Because of the relatively complex nature of this litigation, the court agrees that Plaintiffs' counsel's hourly rates are reasonable in the circumstances of this case.

The *Goldberger* factors assist the court in determining the reasonableness of the requested fee award itself, calculated by either the lodestar or percentage of the fund method. *See Blessing v. Sirius XM Radio, Inc.*, 2012 WL 6684572, at *2 (2d Cir. Dec. 20, 2012). The court thus examines: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50.

Here, Plaintiffs' counsel expended significant time, resources, and effort in litigating the Action. The case has been pending for nearly three years, during which the parties engaged in extensive motion practice and discovery—litigating virtually every aspect of the case. In order to settle the case, the parties negotiated for approximately six months before reaching a resolution. Plaintiffs' 3,250 hours do not reflect any time or expense incurred after the Settlement Agreement was finalized. The time and labor expended by Plaintiffs' counsel thus supports the requested fee.

The litigation was fairly complex and required experienced counsel in both class action suits and securities litigation. Had this matter proceeded to trial, Plaintiffs faced significant challenges in both prevailing on the merits and recovering a judgment for the class. Securities litigation is "notably difficult and notoriously uncertain." *In re FLAG Telecom Holdings, Ltd.*

*Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010); *see also In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation."). Plaintiffs' counsel accepted this case on a contingent fee basis and have received no compensation to date for the time and expense they have incurred. They seek no multiplier to "reward" or "incentivize" this type of litigation. Accordingly, the instant case presents a relatively straight-forward fee application supported by actual billing records and a court docket that reflects hard-fought litigation and zealous representation by all parties.

The most important *Goldberger* factor is the relationship of the requested fee to the results achieved for the class. *See Davis*, 2012 WL 4471226, at *13 (quoting 2 J. McLaughlin, Class Actions: Law and Practice § 6.23 at 6-100) ("Litigation being result-oriented, the settlement attained for the class clearly is the predominant consideration [in awarding attorney's fees], with the time expended relegated to minimal or no consideration."). The results here include a $3.2 million common fund that, in gross, represents a $0.76 per share cash benefit to the holders of the estimated 4,227,989 shares in the class. Class members will receive their portion of the Settlement directly by mail, without having to file a proof claim. Plaintiffs further note that Defendants will pay the administration and notice costs for the Settlement and thus these expenses will not reduce the class's net recovery. Plaintiffs also point to other benefits received by the class which they attribute to this litigation. Without finding a causal relationship, the court notes that, in the course of the litigation, the ROAC share price increased from its price at the inception of the Action and additional disclosures regarding the ROAC merger were made.

The fee award request represents 29.8 percent of the Settlement Fund, which is within the percentage range that courts within the Second Circuit have awarded in other securities litigation.

12

*See, e.g., Perez v. Jupada Enters., Inc.*, 2012 WL 6641490, at *2 (S.D.N.Y. Dec. 13, 2012) ("Courts in this Circuit have routinely granted requests for one-third of the fund in cases in which the settlement funds were substantially larger than this one. In fact, the modest size of the $106,500 settlement weighs in favor of granting the requested fee award of [thirty-three percent] of the common fund.") (internal citations and quotations omitted); *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("[T]he Court finds that the fee request of [thirty-three percent] of the Gross Settlement Fund is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations."). Based upon the foregoing, the court concludes that the requested fee award is reasonably related to the results achieved by Plaintiffs' counsel in this action.

It is not clear whether public policy favors litigation of this nature as a general proposition. *See Davis*, 2012 WL 4471226, at *13. However, courts have observed that adequate compensation for meritorious suits which protect investors may further public policy. *See, e.g., In re Canadian Superior Sec. Litig.*, 2011 WL 5830110, at *3 (S.D.N.Y. Nov. 16, 2011) (finding a twenty-five percent fee adequate to further public policy of encouraging securities lawsuits); *In re Sadia S.A. Sec. Litig.*, 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011) (finding a thirty percent fee adequate to further public policy). Here, the court need not determine whether public policy supports the requested attorney's fee award because the other *Goldberger* factors favor its approval.

Finally, neither Defendants nor any class member has raised any objection or opposition to any aspect of the requested attorney's fee award. Indeed, at the Settlement Hearing, Defendants' counsel modified its position from a "take-no-position" stance to a request that the court approve the requested fee and expense award without modification. Based upon the

foregoing, the court concludes that the requested attorney's fee award is reasonable and hereby approves an attorney's fee award in the amount of $ 953,600.00.

Plaintiffs also request an award of $98,168.62 in expenses which they have supported by an itemized, document-supported list. (Doc. 187-6 at 3.) "'[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2008) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). The request is uncontested, the expenses are reasonable and necessary as they relate to the Action, and they are supported by appropriate documentation. On this basis, they are approved. *See* J. McLaughlin, Class Actions: Law and Practice § 6.24 at 6-110-111) ("If supported by appropriate documentation, class counsel also is entitled to reimbursement . . . for the reasonable expenses incurred in prosecuting the litigation."); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (ruling that plaintiffs' request for reimbursement of filing fees, expert fees, service of process, travel, legal research, and document production and review were "the type for which 'the paying, arms' length market' reimburses attorneys").

Based upon the foregoing, the court hereby approves an attorney's fee award in the amount of $953,600, together with a $98,168.62 expense award which shall be paid pursuant to the Settlement Agreement. Neither the Plaintiffs nor Plaintiffs' counsel shall make any other application for an award of fees and expenses in connection with this Action.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 21st day of March, 2013.

Christina Reiss, Chief Judge
United States District Court

14